[No. A128782. First Dist., Div. Three. Nov. 12, 2010.]

THE PEOPLE, Plaintiff and Respondent, v.
LEROY B. JACKSON, Defendant and Appellant.

## Counsel

Lauretta Marie Oravitz-Komlos, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala Harris, District Attorney, and Laura L. Zunino, Assistant District Attorney, for Plaintiff and Respondent.

## Opinion

**JENKINS, J.**—Defendant Leroy B. Jackson was convicted after a jury trial of misdemeanor drunk driving in violation of Vehicle Code section 23152, subdivisions (a) and (b).[1] Defendant appealed to the appellate division of the superior court, which affirmed his convictions without opinion. Defendant sought relief in this court and we granted defendant's petition for transfer in order to address the issue of whether the trial court erred by admitting evidence that defendant refused to take a preliminary alcohol screening (PAS) test. For the reasons set forth below, we hold that the trial court erred by admitting evidence of defendant's refusal to take the PAS test. Nevertheless, because the trial court's error was harmless, we affirm defendant's convictions.

### Factual and Procedural Background

On September 20, 2005, the San Francisco District Attorney's Office filed a misdemeanor criminal complaint charging defendant with two counts of driving under the influence of alcohol and driving with a blood-alcohol concentration of 0.08 percent or more, in violation of sections 23152, subdivisions (a) and (b), respectively. Before trial, defendant filed a supplemental motion in limine to exclude evidence of his refusal to take the PAS test. At a hearing on the motion, defense counsel argued that evidence of defendant's refusal to take the PAS test should be excluded because he had a statutory right to refuse the PAS test, therefore his refusal was not probative of his consciousness of guilt.[2] In denying defendant's motion, the trial court ruled as follows: "The test is voluntary and the determining factor is that if the defendant had refused to take a field sobriety test, would that refusal be admissible. His [PAS] test is considered one of the field sobriety tests to help the officer determine whether or not to arrest the defendant. Because of that, I will allow the defendant's refusal to come in."

---

[1] Further statutory references are to the Vehicle Code unless otherwise stated.

[2] Section 23612, more fully described below, states in part: "The officer shall advise the person . . . of the person's right to refuse to take the [PAS] test." (§ 23612, subd. (i).)

At trial, the prosecution's case rested largely on the testimony of arresting officer, California Highway Patrol (CHP) Officer Rachaude Crawford. Crawford testified that on September 16, 2005, about 4:00 a.m., he was driving a marked CHP vehicle travelling eastbound on Interstate 80 coming onto the Bay Bridge, accompanied by his partner, Officer Price. Traffic was "extremely light" at that time. Crawford first noticed defendant's vehicle when it overtook his CHP vehicle on the Bay Bridge. After defendant overtook him, Crawford began a "bumper pace" to estimate the speed of defendant's vehicle. Crawford eventually moved in behind defendant's vehicle. Crawford observed that defendant was traversing from lane to lane on both sides and was speeding as well.

Based on these observations, Crawford thought defendant might be under the influence and decided to pull him over. Crawford activated his overhead lights and instructed defendant to pull over to the right-hand side. Defendant reacted slowly and pulled over to the left side instead of to the right. When defendant rolled down the driver's side window, Crawford smelled the odor of alcohol coming from the vehicle and noticed defendant's eyes were red and watery. After defendant admitted he had consumed alcohol that night, Crawford asked him to exit his vehicle and walk back to the CHP car for a driving under the influence (DUI) investigation. Defendant appeared unsteady on his feet as he walked to the CHP vehicle.

After defendant was at the CHP vehicle, Crawford asked him several questions. He asked defendant where he was going and when he had anything to eat or drink that evening. Defendant indicated he last ate a salad and that having driven from a bar in San Francisco, he was going nowhere in particular. Defendant also told Crawford he had consumed "a couple of glasses" of vodka and beer, that he started drinking at 3:00 a.m. and was not sure what time he stopped drinking.

After questioning defendant, Crawford asked defendant to participate in several field sobriety tests (FST's). Defendant agreed. The first FST Crawford administered was the horizontal gaze nystagmus test to look for an involuntary jerking of the eye. Defendant displayed all three indicators of impairment associated with that test. Crawford next administered the Romberg FST, during which defendant was asked to close his eyes, tilt his head back, and estimate the passage of 30 seconds. Defendant swayed during the test, appeared off-balance, and allowed 42 seconds to elapse. The longer time lapse and defendant's poor balance indicated alcohol impairment. Crawford also administered the one-legged stand FST, in which defendant was instructed to raise either leg, look down at his foot, and count out loud. Defendant exhibited three of the four indicators of impairment on this test—putting his foot down prior to starting the test, using arms to maintain

balance and swaying or hopping on one foot. The last FST administered by Crawford was the "hand pat test," which measures impairment of fine motor skills. Defendant exhibited both indicators associated with alcohol impairment.

At this juncture, Crawford asked defendant to take the PAS test, a hand-held breath test carried in the CHP vehicle. Crawford explained to defendant that he had a right to refuse the PAS test and that if arrested he would have to submit to either a blood or a breath test at the station. Defendant refused the PAS test. Based on defendant's driving, on his answers to questions prior to the FST's, and on his performance on the FST's, Crawford placed defendant under arrest. Defendant was arrested at 4:28 a.m. and transported to county jail. When he arrived at the county jail, jail personnel obtained a sample of defendant's breath using the Intoxilyzer (breath analysis) machine. Pursuant to standard testing protocol, defendant was observed for 15 minutes before the test was administered. Defendant's breath was tested twice and both tests reflected a blood-alcohol content (BAC) of 0.10 percent.

The jury also heard testimony at trial from CHP Officer Tony Tam, the training officer for the San Francisco area office. The prosecution offered Officer Tam as an expert witness regarding the administration of calibration checks on the Intoxilyzer 5000 machine used to test defendant. Tam testified that the machine was tested successfully for accurate calibration on September 15 and again on September 22, 2005. The prosecution also presented the testimony of Debbie Madden, a criminologist at the City of San Francisco police lab, who testified as an expert on the effects of alcohol on the body. The prosecutor posed a hypothetical question in which he asked Madden to assume that a male weighing 215 pounds and standing five feet nine inches tall had been drinking beer and vodka at 2:00 a.m., ate a salad around 2:00 a.m., was seen driving just before he was pulled over at 4:00 a.m., and tested at 0.10 percent BAC at 5:00 a.m. Under this hypothetical, Madden opined that the male would likely have tested at the same or slightly higher BAC level at 4:00 a.m. and would have been impaired to drive at that time. Madden also opined that a man weighing 215 pounds would need at least six standard drinks (e.g., a 12-ounce beer at 4.5 percent alcohol) to reach a 0.10 percent BAC.

At the conclusion of the prosecution's case, defendant rested without presenting any witnesses. The jury, after deliberations, found defendant guilty as charged on both counts. After discharging the jury, the trial court proceeded with sentencing. The trial court suspended imposition of sentence on defendant's conviction for DUI of an alcoholic beverage, in violation of section 23152, subdivision (a), and placed defendant on three years' probation. Pursuant to Penal Code section 654, the trial court stayed the sentence

on defendant's conviction for driving with 0.08 percent or more by weight of alcohol in his blood, in violation of section 23152, subdivision (b).

## DISCUSSION

Defendant contends that because his right to refuse the PAS test is conferred by section 23612, evidence of his refusal to take the test should not have been presented to the jury. We agree.

■ Section 23612 authorizes the use of PAS by law enforcement to determine the concentration of alcohol in a breath sample to establish reasonable cause to believe a person was DUI. The section, in pertinent part, provides: "A preliminary alcohol screening test that indicates the presence or concentration of alcohol based on a breath sample in order to establish reasonable cause to believe the person was driving a vehicle in violation of Section 23140, 23152, or 23153 *is a field sobriety test* and may be used by an officer as a further investigative tool. [¶] . . . If the officer decides to use a preliminary alcohol screening test, the officer shall advise the person that he or she is requesting that person to take a preliminary alcohol screening test to assist the officer in determining if that person is under the influence of alcohol or drugs, or a combination of alcohol and drugs. The person's obligation to submit to a blood, breath, or urine test, as required by this section, for the purpose of determining the alcohol or drug content of that person's blood, is not satisfied by the person submitting to a preliminary alcohol screening test. *The officer shall advise the person of that fact and of the person's right to refuse to take the preliminary alcohol screening test.*" (§ 23612, subds. (h) & (i), italics added.)

Here, it is undisputed that defendant cooperated fully in Officer Crawford's administration of a range of FST's prior to the officer's decision to use the PAS as a further investigative tool. It is also undisputed that Officer Crawford advised defendant of his right to refuse the PAS test, that defendant refused the PAS test, and that as required under section 23612, defendant subsequently submitted to a breath test to determine the alcohol content of his blood. The question before us is whether, under these facts, the trial court erred by allowing the jury to hear that defendant exercised his statutory right to refuse the PAS test.

The parties identify no case law that directly addresses the specific issue before us, and our research has revealed none. In support of his assertion of error, defendant relies on the general principle that "the invocation of a right is a matter to [be] kept from a jury." To illustrate his point, defendant cites to case law applying the clearly established rule that the right to invoke the attorney-client privilege is not a matter that should be disclosed to the jury,

citing *U.S. v. Foster* (4th Cir. 1962) 309 F.2d 8, 14–15 (in prosecution for tax evasion, defendant was entitled to invoke the attorney-client privilege and his invocation of the privilege should not have been opened to an inference of guilt). Respondent, on the other hand, contends that the trial court correctly admitted evidence of defendant's refusal to take the PAS test. According to respondent, the PAS test, as described in the statute, is an FST, and courts have routinely admitted evidence of a refusal to take FST's as consciousness of guilt, citing *Marvin v. Department of Motor Vehicles* (1984) 161 Cal.App.3d 717, 719–720 [207 Cal.Rptr. 793] (*Marvin*) (driver's refusal to exit vehicle and participate in FST's may be construed as consciousness of guilt). Having carefully considered the competing views of the parties, and the language of section 23612, we conclude that defendant's argument is the more persuasive because it is logically consistent with the clear intent of the statute and serves to protect the statutory right defined therein.

We first note that section 23612 clearly and unambiguously states that before administering a PAS test, "[t]he officer *shall* advise the person . . . of *the person's right to refuse* to take the preliminary alcohol screening test." (§ 23612, subd. (i), italics added.) Patently, the Legislature not only conferred upon citizens a right to refuse to take the PAS test but, in addition, required law enforcement to inform citizens of such right. As a matter of simple logic, it makes little sense to grant a right of refusal yet allow the prosecution to admit evidence of that refusal to establish consciousness of guilt. Respondent's interpretation of the statute would, if adopted, effectively abrogate the express right of a detainee to refuse the PAS test by allowing evidence of his or her refusal before the jury. We decline to adopt an interpretation of section 23612 that is so at odds with the plain language of the statute and fails to advance the Legislature's clearly expressed intent to provide detainees with a right of refusal to the PAS test.[3] (See *Commission on Peace Officer Standards & Training v. Superior Court* (2007) 42 Cal.4th 278, 290 [64 Cal.Rptr.3d 661, 165 P.3d 462] [courts must construe a statute in a way "that comports most closely with the Legislature's apparent intent, with a view to promoting rather than defeating the statute['s] general purpose"].)

Additionally, while not controlling, we find the rationale of the Court of Appeal, First District, Division One, in *People v. Zavala* (1966) 239 Cal.App.2d 732, 736 [49 Cal.Rptr. 129] (*Zavala*) lends support to the

---

[3] Defendant posits that the statutory right to refuse the PAS test is analogous to the attorney-client privilege and, like the decision to invoke the attorney-client privilege, should not have been presented to the jury. Defendant's analogy is close to the mark. (See, e.g., Evid. Code, § 913, subd. (a) [stating that the court and counsel may not comment upon the fact that a witness exercised a privilege "not to testify with respect to any matter"]; see also *People v. Lopez* (1999) 71 Cal.App.4th 1550, 1554 [84 Cal.Rptr.2d 655] [after a court determines a witness has a valid 5th Amend. right not to testify, "it is . . . improper to require him to invoke the privilege in front of a jury . . ."].)

conclusion we reach here. In *Zavala*, the issue was whether evidence of a person's refusal to submit to a Nalline test may be admitted into evidence where the applicable statute mandated that the test could only be administered *with the written consent* of the person arrested.[4] At trial, the doctor who examined the defendant at the Oakland Nalline Clinic after his arrest testified before the jury that the defendant refused to submit to a Nalline test. (*Zavala, supra*, 239 Cal.App.2d at p. 736.) On appeal, the defendant contended it was error for the trial court to admit into evidence over his objection the doctor's testimony concerning his refusal to submit to a Nalline test. (*Ibid.*)

The *Zavala* court agreed with the defendant's contention. The court noted that because Health and Safety Code former section 11723 provided that an arrestee must give written consent before being administered the test, "the Legislature intended to provide the arrested person with the 'right to refuse' to take the Nalline test." (*Zavala, supra*, 239 Cal.App.2d at p. 739.) The court concluded that because "such right would be rendered valueless if the test could nevertheless be given without the arrested person's consent, . . . the Legislature has by the enactment of section 11723 made inadmissible in evidence all Nalline tests given in situations encompassed within the statute but *without* written consent." (*Ibid.*, italics added.)

The *Zavala* court then turned to the question of "the admissibility in evidence of the fact of the *refusal* to submit to the Nalline test rather than with the admissibility of the results of the test." (*Zavala, supra*, 239 Cal.App.2d at p. 740.) The court stated that cases applying the " 'admissions by conduct' " rule under the general principle that "acts of an accused designed to escape arrest, trial or conviction afford an inference of consciousness of guilt and are receivable against him as implied or tacit admissions" (*ibid.* [citing and discussing cases]), did not govern the refusal to take a Nalline test. In this regard, the court concluded: "In those cases the person arrested did not have a 'right to refuse' to take the . . . test. Since he did not have such right, his refusal to take the test constituted conduct tending to show a consciousness of guilt. In the case of Nalline tests a person is given the 'right to refuse' by section 11723. Such right, however, would be rendered

---

[4] The *Zavala* court referred to the test described in Health and Safety Code former section 11723 (section 11723) as the "Nalline test" after the synthetic opiate antinarcotic drug used in the test. (*Zavala, supra*, 239 Cal.App.2d at pp. 736–737.) Former section 11723 stated that where " 'a person has been arrested for a criminal offense and is suspected of being a narcotic addict, a law enforcement officer having custody of such person may, *with the written consent of such person*, request the city or county health officer . . . to administer to the arrested person a test to determine . . . whether the arrested person is a narcotic addict.' " (239 Cal.App.2d at pp. 736–737, italics added, quoting former § 11723.) After the repeal of former section 11723, its substantive provisions, including the requirement of written consent by the arrestee to any testing for addiction to a controlled substance, were included within Health and Safety Code section 11552. (See Historical and Statutory Notes, 40 pt. 3 West's Ann. Health & Saf. Code (2007 ed.) foll. §§ 11721–11729, p. 198.)

valueless if the trier of fact were permitted to draw an inference of guilt from its exercise. We hold, therefore, that in the instant case appellant had a 'right to refuse' to take the Nalline test and that it was error for the trial court to admit in evidence the fact of appellant's refusal to submit to the test." (*Zavala, supra*, 239 Cal.App.2d at p. 741.)

The *Zavala* court's reasoning concerning the right to refuse the Nalline test applies with even greater force to defendant's refusal to take the PAS test. In *Zavala*, the right to refuse was inferred from the statute's written consent requirement, whereas section 23612 expressly grants a right to refuse, and requires law enforcement to inform citizens of such right. Moreover, just as in *Zavala*, the "admissions by conduct" rationale for admission of a refusal to take a PAS test has no probative force, where, as here, the right to refuse is legislatively granted. Therefore, in accord with the reasoning in *Zavala*, we conclude that because defendant had a " 'right to refuse' " to take the PAS test under section 23612, the trial court erred by allowing the arresting officer to testify that defendant refused to take the test. (*Zavala, supra*, 239 Cal.App.2d at p. 741.)

Respondent, in an effort to forestall the conclusion we reach here today, argues that the *Marvin* case, decided by the Court of Appeal, First District, Division One, provides support for the trial court's admission of defendant's refusal to take the PAS test. We disagree. In *Marvin*, the court held that where an officer observed a person driving her car around in circles in a parking lot, and upon questioning her further observed that she had a strong odor of alcohol on her breath and bloodshot eyes, the driver's subsequent refusal to exit her vehicle and perform an FST was "reasonably interpreted as a consciousness of guilt" for purposes of determining whether probable cause existed to arrest her on suspicion of drunk driving. (*Marvin, supra*, 161 Cal.App.3d at pp. 719–720.) *Marvin* involved a driver's refusal to participate in the standard FST's and did not address a driver's refusal to take the PAS test. As noted above, the PAS test is distinguished from the standard FST's because it carries a statutory right to refuse the test. Thus, *Marvin* and the cases cited therein, which stand for the general principle that evidence of a refusal to submit to a standard FST is admissible as consciousness of guilt, do not govern the more specific issue we confront here of whether evidence of a person's refusal to submit to a PAS FST is similarly admissible where the right to refuse the test is granted by statute. In sum, we agree with defendant's contention that it was improper to allow the jury to hear evidence that defendant exercised his statutory right to refuse the PAS test.

Having determined that evidence of defendant's refusal to take the PAS test should not have been presented to the jury, we further conclude that any error was harmless because it was not "reasonably probable that a result more favorable to [defendant] would have been reached" had such evidence not

been admitted. (*People v. Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243]; see *People v. Welch* (1999) 20 Cal.4th 701, 750 [85 Cal.Rptr.2d 203, 976 P.2d 754].) First, as more fully set forth above, the prosecution's evidence of defendant's guilt was particularly strong. The arresting officer testified to defendant's erratic driving, the odor of alcohol emanating from his vehicle, his watery eyes and unsteady gait, and also described how defendant displayed multiple indicators of impairment on every FST administered to him.[5] In addition, defendant's blood-alcohol ratio was tested on two occasions. Each test resulted in a BAC of 0.10 percent, establishing that defendant's BAC clearly exceeded the legal limit of 0.08 percent.

Moreover, regarding any potential for prejudice, although Officer Crawford testified that defendant refused the PAS test, he also informed the jury that defendant had a right to refuse to take the test. Thus, the jury knew defendant had a right to refuse the PAS test, and also knew that defendant participated fully in all the other FST's the officer required of him.

Furthermore, the prosecutor did not argue that defendant's refusal to take the PAS test was evidence of his consciousness of guilt. Indeed, the prosecutor's sole reference to the PAS evidence in his closing argument was as follows: "Next—the field sobriety test he [(Crawford)] was going to administer was the PAS test, the hand-held alcohol test to see if, in fact, it was over .08. He [(defendant)] refused. It was his right to refuse but it's something also the officer can consider. So at that point, he was placed under arrest, 4:28 a.m., not even a half hour from when he was observed driving." The prosecutor's sole reference to defendant's refusal to take the PAS test occurred during his description of the officer's decision to arrest defendant for being under the influence. There was no emphasis or focus by the prosecutor on defendant's refusal to take the PAS test nor any entreaty that the jury should attach significance to it. Rather, the prosecutor acknowledged to the jury that defendant had a right to refuse the test, and did not argue to the jury that it should consider defendant's refusal as evidence of his consciousness of guilt of the crime.

In sum, evidence that defendant refused to take the PAS test played little or no role in the prosecution's case against him and the other evidence of his guilt was substantial. Thus, we are convinced that the trial court's error in

---

[5] At oral argument, defendant's appellate counsel argued that several discrepancies in the report prepared by Officer Crawford showed that Crawford may have confused the particulars of defendant's arrest with those of another arrestee; hence the court's error in admitting evidence of defendant's refusal to take the PAS test was not harmless. Our review of the excerpts of Officer Crawford's testimony cited by appellant's counsel does not alter our conclusion that the error here was harmless.

admitting evidence of defendant's refusal to take the PAS test was harmless.[6] Accordingly, defendant's convictions must be affirmed.

DISPOSITION

The judgment is affirmed.

Pollak, Acting P. J., and Siggins, J., concurred.

Appellant's petition for review by the Supreme Court was denied February 23, 2011, S189184.

---

[6] Assuming without deciding that, as asserted by defendant, the introduction of evidence at trial of his refusal to take the PAS test was also a violation of his federal due process rights, we conclude that any such error was harmless under the standard of *Chapman v. California* (1967) 386 U.S. 18, 24 [17 L.Ed.2d 705, 87 S.Ct. 824] (federal constitutional error can be held harmless if reviewing court is "able to declare a belief that it was harmless beyond a reasonable doubt").