Filed 6/27/13  P. v. Hernandez CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>  Plaintiff and Respondent,<br><br>v.<br><br>JUAN O. HERNANDEZ,<br><br>  Defendant and Appellant. | A136580<br><br>(Alameda County<br>Super. Ct. No. H52078) |

  Juan O. Hernandez (appellant) was convicted, following a jury trial, of driving under the influence of alcohol.  On appeal, he contends the trial court abused its discretion when it admitted into evidence the results of the preliminary alcohol screening (PAS) tests he was given.  We shall affirm the judgment.

### PROCEDURAL BACKGROUND

  Appellant was charged by information with one count of felony driving under the influence of alcohol, with the additional allegation that he had suffered three prior driving under the influence (DUI) convictions (Veh. Code, §§ 23152, subd. (a); 23550; 23550.5),[1] and one count of possession of metal knuckles (Pen. Code, § 21810).

  Following a trial, the jury found appellant guilty of the DUI offense and not guilty of possession of metal knuckles.  Appellant waived a jury trial on the prior conviction allegations and the trial court found them to be true.

---

[1] All further statutory references are to the Vehicle Code, unless otherwise indicated.

1

On August 24, 2012, the trial court sentenced appellant to one year, four months in state prison.

On September 12, 2012, appellant filed a notice of appeal.

*FACTUAL BACKGROUND*

Santos Romo, a California Highway Patrol officer assigned to the Castro Valley office, testified that, on February 12, 2012, at approximately 2:15 a.m., he was on patrol when he noticed a green Ford Explorer traveling in a "serpentine fashion," i.e., moving side to side into and out of lanes on the freeway.[2] Romo initiated a traffic stop of the vehicle, activating the red and blue lights on his patrol car. The driver was slow to respond, but eventually pulled over to the side of the freeway. Romo then contacted the driver of the vehicle, whom he identified as appellant.

The first thing Romo noticed when he approached appellant was that appellant had a clear bottle between his legs that was partially filled with a red substance. Romo also noticed that appellant "was somewhat confused, unaware of what was going on. He had red watery eyes, and I detected the odor of alcoholic beverage exhibiting [*sic*] from the vehicle." Romo asked appellant whether he had been drinking and appellant said, "a little bit." As he spoke, appellant slurred his words. Romo had appellant exit his vehicle and then asked a series of questions as part of his investigation. When he asked whether appellant was sick or injured, appellant said he had head pain. "He said he took alcohol for medication and ibuprofen."

Romo then administered the first of four field sobriety tests to appellant: the horizontal gaze nystagmus test, which required appellant to follow Romo's finger with his eyes. Appellant failed the test in that he "displayed all six clues" of possible impairment, which involved his eyes jerking at different angles. Romo next administered the one-leg stand, which required appellant to stand on one foot and count while looking down at his toe. Appellant failed this test also in that he demonstrated all four "clues"

_____

[2] A two-minute video recording of the weaving Ford Explorer Romo had observed and videotaped was played for the jury at trial.

2

that he might be impaired including putting his foot down, swaying side to side, using his arms for balance, and hopping.

Romo then administered the finger count, which required appellant to touch each of his four fingertips with his thumb while counting to four and back to one.  Appellant failed this test too:  "[h]e completed four sets incorrectly just counting randomly with different fingers and different counts. . . .  And also he utilized the pads of his fingers" rather than the tips.  Romo administered a final test, the Romberg test, which required appellant to estimate when 30 seconds had elapsed.  Appellant guessed that 30 seconds had passed after 16 seconds.

Finally, Romo had appellant blow twice into a PAS device, at 2:32 a.m. and 2:34 a.m.  His breath registered a blood alcohol content of 0.16 after the first test and 0.15 after the second test.

Romo arrested appellant and, during a search, found a belt with metal knuckles serving as the buckle.  Romo then transported appellant to Santa Rita jail, where he was given a blood test.

Phlebotomist Jessica Hernandez testified that she drew two vials of blood from appellant on February 12, 2012, at 3:26 a.m., at Santa Rita jail.

Tisa Baumgartner, a forensic toxicologist with Forensic Analytical Sciences, testified that she analyzed the two samples of appellant's blood.  The blood alcohol content of both samples was measured at 0.132.

## DISCUSSION

### Admission of the PAS Test Results at Trial

Appellant contends the trial court abused its discretion when it admitted into evidence the results of his PAS test.  According to appellant, the results were inadmissible because Officer Romo did not comply with title 17 of the California Code of

3

Regulations (Cal. Code Regs., tit. 17, § 1215 et seq.),[3] in that Romo failed to advise him that he had the right to refuse to take the PAS test.[4]

Section 23612 authorizes law enforcement officers to use the PAS as a field test to determine the concentration of alcohol in a person's breath sample in order to establish reasonable cause to believe a person was driving under the influence. (§ 23612, subd. (h).) Under section 23612, subdivision (i), if an officer decides to use a PAS test, the officer must advise the person that he or she is requesting that person to take the PAS test "to assist the officer in determining if that person is under the influence of alcohol or drugs, or a combination of alcohol and drugs. The person's obligation to submit to a blood, breath, or urine test, as required by this section, for the purpose of determining the alcohol or drug content of that person's blood, is not satisfied by the person submitting to a [PAS] test. *The officer shall advise the person of that fact and of the person's right to refuse to take the [PAS] test*." (Italics added.)

In *People v. Williams* (2002) 28 Cal.4th 408, 417 (*Williams*), the California Supreme Court held that, since the central question is whether PAS tests are reliable, such "results are admissible upon a showing of either compliance with title 17 or the foundational elements of (1) properly functioning equipment, (2) a properly administered test, and (3) a qualified operator . . . ." In reaching this conclusion, the court recognized that the exclusion of relevant evidence is barred by the California Constitution's Right to Truth in Evidence provision (Cal. Const., art. I, § 28, subd. (d)), unless otherwise compelled by the United States Constitution. (*Williams*, at p. 415.)

---

[3] " 'Title 17 establishes procedures for determining "the concentration of ethyl alcohol in samples of blood, breath, urine, or tissue of person involved in traffic accidents or traffic violations." ' [Citations.] Among other things, the regulations include standards for licensing and operation of laboratories, procedures for breath-alcohol analysis, and performance of instruments used to analyze breath-alcohol levels." (*Roze v. Department of Motor Vehicles* (2006) 141 Cal.App.4th 1176, 1181, fn. 1.) All further references to title 17 are to the California Code of Regulations.

[4] Officer Romo testified that he did not admonish appellant of his right to refuse to take the PAS test because he believed that, since appellant was on probation, such an admonition was not required.

4

Here, appellant does not claim that the PAS test results were irrelevant. (See *Williams*, *supra*, 28 Cal.4th at p. 415.) Nor does he argue that the PAS equipment was not "properly functioning" or that the test was not administered by "a qualified operator." (*Id.* at p. 417.) He argues only that Romo's failure to inform him of his right of refusal means that the PAS test was not "properly administered," as is required by *Williams* in the absence of substantial compliance with title 17. (*Ibid.*)

We find unpersuasive appellant's narrow reading of *Williams*. Such an interpretation is not reconcilable with the *Williams* court's statement that it is the *reliability* of the PAS test that is the key question in determining its admissibility. (See *Williams*, *supra*, 28 Cal.4th at pp. 417–418.) Here, it is undisputed that the PAS test given to appellant was reliable. Nor is appellant's interpretation of *Williams* consistent with its holding: that PAS test results were properly admitted despite deficiencies in the administration of the test. (See *ibid.* [PAS test results were reliable even though equipment was not tested with frequency demanded by regulations and officer did not observe defendant for requisite time period before administering test].)

We also find unpersuasive appellant's reliance on *People v. Jackson* (2010) 189 Cal.App.4th 1461 (*Jackson*), in which Division Three of this district held that evidence of the defendant's refusal to take a PAS test should not have been presented to the jury. The court reasoned: "As a matter of simple logic, it makes little sense to grant a right of refusal yet allow the prosecution to admit evidence of that refusal to establish consciousness of guilt." (*Id.* at p. 1467.) The issue and holding in *Jackson* are not relevant to the issue here, which involves the officer's failure to admonish appellant in the first instance that he had the right to refuse to take the test.

In any event, even were we to find that the court abused its discretion in admitting the results of the PAS test into evidence, any possible error was plainly harmless because it is not reasonably probable that a result more favorable to appellant would have been reached had this evidence not been admitted. (See *People v. Watson* (1956) 46 Cal.2d 818, 836 (*Watson*); accord, *Jackson*, *supra*, 189 Cal.App.4th at pp. 1469–1470 [applying

5

*Watson* standard of error to question whether improper admission of evidence that defendant refused to take PAS test was prejudicial].)

An abundance of evidence of appellant's guilt, independent of the PAS test results, was admitted at trial. Importantly, a blood test administered about an hour after appellant took the PAS test showed an alcohol level of 0.132 percent. This result, while lower than the 0.16 and 0.15 earlier obtained from the PAS test, nonetheless demonstrated that appellant's blood alcohol content was significantly in excess of the legal limit of 0.08 percent more than an hour after Officer Romo stopped him on the freeway.

The jury also watched a videotape of appellant weaving between lanes and of his slowness to respond to Romo's signal to pull over. In addition, when stopped, appellant had a partially filled bottle of alcohol between his legs and admitted that he had been drinking. Romo further observed that appellant had red watery eyes, smelled like alcohol, and was slurring his words. He appeared to be confused and unaware of what was happening. Appellant also failed all four of the field sobriety tests Romo administered.

Appellant attempts to split hairs about the significance of the results for each field sobriety test he was given and also claims that his asserted head pain could have explained his symptoms and performance on the field sobriety tests. Head pain, however, clearly cannot explain all of appellant's symptoms and responses. Nor can it explain his elevated blood alcohol level of 0.132 at 3:26 a.m., over an hour after Romo first contacted him.

Accordingly, any possible error in admission of the PAS test results at trial was harmless. (See *Watson*, *supra*, 46 Cal.2d at p. 836.)[5]

_____

[5] Appellant summarily asserts, for the first time in his reply brief that "denying him his right to refuse the PAS test and using those test results against him is analogous to abrogating his 5th Amendment right not to testify, to remain silent, to not incriminate himself. And because a federal constitutional right is implicated, the trial court was compelled to exclude the PAS test results." He also argues, again for the first time in his reply brief, that any error should be judged by the standard for federal constitutional error. (See *California v. Chapman* (1967) 386 U.S. 18, 24 (*Chapman*).)

## *DISPOSITION*

The judgment is affirmed.

_____
Kline, P.J.

We concur:


_____
Haerle, J.


_____
Lambden, J.

---

We will not address appellant's abbreviated constitutional arguments, which were not raised in his opening brief. (See *People v. Adams* (1990) 216 Cal.App.3d 1431, 1441, fn. 2 [issues raised for first time in reply brief generally will not be considered on appeal]; accord, *Crowley Maritime Corp. v. Boston Old Colony Ins. Co.* (2008) 158 Cal.App.4th 1061, 1072; see also *In re Marriage of Falcone & Fyke* (2008) 164 Cal.App.4th 814, 830 [treating contentions not supported by "cogent legal argument or citation of authority" as waived].) Moreover, even were we to consider the alleged error under the *Chapman* standard, given the strength of the other evidence of guilt, such an error would be harmless beyond a reasonable doubt. (See *Chapman*, *supra*, 386 U.S. at p. 24.)