[No. G021872. Fourth Dist., Div. Three. May 13, 1999.]

THE PEOPLE, Plaintiff and Respondent, v.
JOSE MANUEL LOPEZ, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, only the two introductory paragraphs, part IV, and the disposition are certified for publication.

COUNSEL

Stephen M. Lathrop and Michael Linfield, under appointments by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren and Bill Lockyer, Attorneys General, George Williamson, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Janelle M. Boustany and Patti W. Ranger, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**BEDSWORTH, J.**—A jury found Jose Manuel Lopez guilty of assault with a firearm, street terrorism, robbery, possession of a firearm by a felon, and possession of a firearm in violation of probation. It also found he committed the assault with a firearm for the benefit of the Southside criminal street gang (Southside) and personally used a firearm in commission of the robbery. The trial court struck the gang enhancement and sentenced Lopez to eleven years and four months in prison: five years for robbery, four for the personal use of a firearm, one year for assault with a firearm, eight months for street terrorism, and another eight months for possessing a firearm while a felon.

Lopez contends the trial court committed reversible error by (1) not instructing the jury, sua sponte, on the requirements of "active gang membership"; (2) failing to require, sua sponte, juror unanimity as to the predicate offenses underlying the gang enhancement; (3) admitting evidence of an uncharged drive-by shooting; (4) requiring a witness to refuse to testify and finding him in contempt of court in the presence of the jury; (5) denying his request to bifurcate the gang allegations; and (6) simultaneously imposing

sentence for his possession of a firearm and personal use of a firearm—a violation of Penal Code section 654. Finally, he complains (7) he was denied the effective assistance of counsel because his trial attorney failed to object when the gang expert called by the prosecution opined the offenses were committed for the benefit of the Southside gang. None of these arguments has merit, and we affirm the judgment. In the published portion of our opinion, we conclude the trial court did not err when it required a gang member to refuse to testify, and then held him in contempt of court, in the presence of the jury.

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .*

## I-III*

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

## IV

To help establish Southside was involved in a pattern of criminal gang activity, as required by Penal Code section 186.22, the prosecutor called Southside veteran Juan Miranda to testify about a gang-related assault he had committed at a Carl's Jr. about a month before the assault in this case. At the time he was called as a witness, Miranda had already pled guilty to the charge, and the time in which he might have appealed his conviction had passed without an appeal being filed.

Before Miranda took the witness stand, he made it clear he had no intention of testifying against Lopez. Upon being advised of Miranda's attitude, the court held a hearing outside the presence of the jury and appointed counsel to advise the witness. The court explained Miranda had no right to withhold testimony and no Fifth Amendment privilege left to invoke, but Miranda refused to answer any questions about the events underlying his guilty plea. The court warned that his continued refusal to testify would constitute a contempt of court. But Miranda persisted.

The court then opined, "I don't think I have any right to prevent [the prosecutor] from calling this man as a witness and putting him on the stand. We've taken measures to ensure his rights are protected so far. Put him on the stand, if he invokes the Fifth or whatever he invokes, I can find that it's inappropriate . . . . I'll order him to testify. If he says, No, I'll find him in contempt." And so the court did—committing, according to Lopez, reversible error in the process.

*See footnote, *ante*, page 1550.

■ Invoking the teaching of our Supreme Court in *People* v. *Mincey* (1992) 2 Cal.4th 408, 440-442 [6 Cal.Rptr.2d 822, 827 P.2d 388], Lopez insists it is improper for a court to require a witness be put on the stand to claim the Fifth Amendment privilege in the presence of the jury when it has already determined he will refuse to testify. Assuming, of course, the witness has a valid Fifth Amendment privilege to claim, Lopez is correct. But that was not the situation here. As the trial court correctly discerned, Miranda had already waived his Fifth Amendment right.

■ It is "the duty of [the] court to determine the legitimacy of a witness'[s] reliance upon the Fifth Amendment. [Citation.]" (*Roberts* v. *United States* (1980) 445 U.S. 552, 560, fn. 7 [100 S.Ct. 1358, 1364, 63 L.Ed.2d 622, 630].) In fulfilling its duty here, the trial court recognized what is now a well-settled principle: When a defendant has already pled guilty to a charge, and time to appeal the conviction has run without an appeal being filed, the defendant's privilege to avoid compelled self-incrimination with regard to the facts underlying the conviction no longer exists. (*People* v. *Fonseca* (1995) 36 Cal.App.4th 631, 635 [42 Cal.Rptr.2d 525]; *In re Courtney S.* (1982) 130 Cal.App.3d 567, 573 [181 Cal.Rptr. 843].) ■ Although the court carefully explained this to Miranda, he refused to answer any of the prosecutor's questions. And when the court ordered him to testify, he defied it.

■ Once a court determines a witness has a valid Fifth Amendment right not to testify, it is, of course, improper to require him to invoke the privilege in front of a jury; such a procedure encourages inappropriate speculation on the part of jurors about the reasons for the invocation. An adverse inference, damaging to the defense, may be drawn by jurors despite the possibility the assertion of privilege may be based upon reasons unrelated to guilt. These points are well established by existing case law. (See, e.g., *People* v. *Mincey, supra,* 2 Cal.4th at p. 441.) But where a witness has no constitutional or statutory right to refuse to testify, a different analysis applies. Jurors are *entitled* to draw a negative inference when such a witness refuses to provide relevant testimony.

*United States* v. *Hearst* (9th Cir. 1977) 563 F.2d 1331 is instructive. After taking the stand to testify in her own defense, Patricia Hearst refused to submit to most of the prosecutor's cross-examination, claiming a Fifth Amendment privilege. Relying on cases dealing with valid assertions of the privilege, she argued "that even if she had no right to refuse to answer the government's questions, the court erred in allowing the prosecution to continue to ask questions which it knew would elicit repeated assertions of the privilege against self-incrimination." (*Id.* at p. 1341.)

The court responded by observing ". . . appellant's authorities do not support her proposition. Her cases involve situations in which the government or the defendant questioned a witness or a co-defendant, knowing that a valid, unwaived Fifth Amendment privilege would be asserted. [Citations.] She fails to offer support relating to the very different problem, present in our case, in which the government attempts to cross-examine a witness-defendant who has previously waived his privilege against self-incrimination." (*United States* v. *Hearst, supra,* 563 F.2d at p. 1341.)

The court explained, "When a witness or a defendant has a valid Fifth Amendment privilege, government questions designed to elicit this privilege present to the jury information that is misleading, irrelevant to the issue of the witness's or the defendant's credibility, and not subject to examination by defense counsel. [Citation.] Therefore, we do not allow this form of questioning. [¶] But when a defendant [or a witness] has voluntarily waived his Fifth Amendment privilege . . . , the rationale for prohibiting privilege-invoking queries . . . does not apply." (*United States* v. *Hearst, supra,* 563 F.2d at p. 1341.) We agree and think the same analysis makes sense here.

■   No person other than a defendant has a right to refuse to be sworn as a witness (*Vannier* v. *Superior Court* (1982) 32 Cal.3d 163, 171 [185 Cal.Rptr. 427, 650 P.2d 302]; *People* v. *Chandler* (1971) 17 Cal.App.3d 798, 805 [95 Cal.Rptr. 146]). And after administration of the oath, a witness who has a privilege to assert must generally assert it on a question-by-question basis. (*People* v. *Ford* (1988) 45 Cal.3d 431, 441 [247 Cal.Rptr. 121, 754 P.2d 168, 76 A.L.R.4th 785]; *People* v. *Shipe* (1975) 49 Cal.App.3d 343, 349 [122 Cal.Rptr. 701]; cf. *People* v. *Cornejo* (1979) 92 Cal.App.3d 637, 658-659 [155 Cal.Rptr. 238].) Initial inquiries intended to test the validity of the claim should be conducted outside the presence of the jury. (*People* v. *Mincey, supra,* 2 Cal.4th at p. 441; *People* v. *Ford, supra,* 45 Cal.3d at p. 441, fn. 6.) If the court finds a valid privilege exists, it can either limit the questions the parties may ask before the jury or excuse the witness, if it becomes clear that any testimony would implicate the privilege.

■   In this case, once the trial court was made aware the witness intended to claim a Fifth Amendment privilege, it made the proper inquiries and determined the testimony of the witness would be relevant, and the privilege did not apply. It then ordered Miranda to testify before the jury. Miranda took the stand and refused to answer questions, basing his refusal on a privilege he was not entitled to claim. We find, under these circumstances, that the jury was entitled to consider Miranda's improper claim of privilege against him as evidence relevant to demonstrate exactly what the gang expert had opined: that gang members act as a unit to advance the

cause of the gang and to protect their members. This may not have been the purpose for which Miranda was originally called as a witness but it is what he chose to provide, and we see no more reason for excluding it than if he had testified to it directly.

As the United States Supreme Court has observed, "A witness may not employ the privilege to avoid giving testimony that he simply would prefer not to give." (*Roberts* v. *United States, supra*, 445 U.S. at p. 560, fn. 7 [100 S.Ct. at p. 1364, 63 L.Ed.2d at p. 630].) But that is exactly what Miranda tried to do. Given that his decision was fully informed and willful—and in disobedience of a court order—the jury was entitled to consider his defiance against him and, to the extent it validated the gang expert's testimony, against Lopez. Thus, we conclude if any error in judgment was committed, it was committed by Miranda, not the court.

### V-VII*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

The judgment is affirmed.

Rylaarsdam, Acting P. J., and Seymour, J.,† concurred.

Appellant's petition for review by the Supreme Court was denied August 25, 1999. Mosk, J., and Kennard, J., were of the opinion that the petition should be granted.

---

*See footnote, *ante*, page 1550.

†Judge of the Orange Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.