Filed 3/11/14  P. v. Jones CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### SECOND APPELLATE DISTRICT

### DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>TIMOTHY S. JONES,<br><br><br>    Defendant and Appellant. | B247103<br><br><br>(Los Angeles County<br>Super. Ct. No. BA398079) |

APPEAL from a judgment of the Superior Court of Los Angeles County. Barbara Johnson, Judge.  Reversed.

Janet Uson, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Mary Sanchez and Rene Judkiewicz, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Appellant Timothy S. Jones appeals from judgment on his conviction for sale/transportation/offer to sell a controlled substance (cocaine) in violation of Health and Safety Code section 11352. Before this court he complains that the trial court: (1) violated his constitutional rights to due process, a fair trial and to present a defense when it improperly concluded that a witness was entitled to invoke his Fifth Amendment privilege against self-incrimination and was not required to testify; (2) erred in failing to find that he had set forth a *prima facie* case that the prosecutor had exercised his preemptory challenges of jurors in a discriminatory manner; and (3) erred in excluding evidence of a witness's prior conviction. In addition, appellant requests that this court conduct an independent review of the *in camera* hearing on his motion filed pursuant to *Pitchess v. Superior Court* (1974) 11 Cal.3d 531, in which he sought discovery of the police personnel records of the officers who arrested him.

As we shall explain, appellant is entitled to a reversal of the judgment. The trial court erred in concluding that the witness could invoke his Fifth Amendment right against self-incrimination to refuse to answer questions. Furthermore, based on the record before us we are not convinced that the error was harmless beyond a reasonable doubt. Concerning the *Pitchess* motion, our independent review of the record from the *in camera* hearing leads us to conclude the court committed no error with respect to disclosing certain police personnel records. Nonetheless, it is unclear whether all of the records subject to the order were actually disclosed to appellant. Accordingly, we reverse.[1]

### FACTUAL AND PROCEDURAL HISTORY

On the afternoon of May 24, 2012, Robert De La Roca rode his bicycle in downtown Los Angeles on Fourth Street in an area where illegal drug sales are transacted. De La Roca had purchased drugs in that area before and had come to the

---

[1] In view of our conclusion, we do not reach the merits of appellant's other claims regarding the exclusion of evidence or the court's ruling on appellant's *Wheeler/Batson* motion.

location that afternoon to buy drugs. Appellant sat on a chair in the area. Appellant called out to De La Roca and offered to sell him rock cocaine. De La Roca paid appellant $10 and appellant gave De La Roca a small white rock. Appellant instructed De La Roca to put the rock cocaine in his mouth. De La Roca complied and rode away on his bicycle.

The interaction between appellant and De La Roca was observed by two Los Angeles Police Officers: Officer Luz Bednarchik and Officer Guillermo Avila. The officers, who were in plain clothes and an unmarked car, stopped De La Roca near the corner of Fifth and Los Angeles Streets. They ordered De La Roca to spit out the item in his mouth. Officer Bednarchik retrieved the small white rock[2] from the ground and booked it into evidence.

Officer Bednarchik directed other officers to apprehend appellant. Police officers approached appellant and took him into custody. When he was apprehended appellant had $100 in cash; he had no drugs in his possession.

Appellant was arrested and charged with one count of sale/transportation/offer to sell the controlled substance of cocaine base in violation of Health and Safety Code section 11352, subdivision (a)(1). The information further alleged that appellant had three prior convictions for the sale or possession of a controlled substance.

Appellant pled not guilty. Prior to trial appellant filed a motion pursuant to *Pitchess v. Superior Court, supra,* 11 Cal.3d 531, in which he sought discovery of the police personnel records of the officers who arrested him. Specifically he sought to discover complaints and information, *inter alia,* about the officers concerning acts of fabrication of charges and evidence, false arrest, perjury, dishonesty, writing of false police reports, and planting of evidence. The trial court granted the motion as to both officers relating to any acts of dishonesty and false police reports and ordered an *in*

---

[2]   At trial a police criminalist testified that the item booked into evidence by Officer Bednarchik was rock cocaine.

*camera* hearing to examine the agency files relating to the officers. After the hearing the court ordered disclosure of information to the defense.

The information disclosed pursuant to the *Pitchess* proceedings led the defense to discover Jovan Taylor who, at the time of appellant's trial, was in custody waiting to be arraigned on unrelated charges. Prior to trial appellant informed the court that he intended to call Mr. Taylor in the case as a "*Pitchess* witness." Appellant apparently planned to elicit testimony from Mr. Taylor relating to the conduct of Officer Bednarchik, presumably to show that Officer Bednarchik had engaged in acts of fabrication of charges and evidence, false arrest, perjury, dishonesty, writing of false police reports, and/or planting of evidence in another matter to impeach Officer Bednarchik's credibility and to bolster appellant's theory that Officer Bednarchik had fabricated the charges against him. The trial court appointed Mr. Taylor legal counsel to advise him. Mr. Taylor and his counsel informed the court that Mr. Taylor intended to invoke his Fifth Amendment privilege against self-incrimination in this case because he had an unrelated "open case" pending against him. The court accepted the representation, and ruled that Mr. Taylor was entitled to invoke his Fifth Amendment privilege to refuse to answer questions in this case.

During the trial De La Roca and both police officers described the circumstances of the drug transaction and arrest.

Appellant testified on his own behalf. He testified that he was an unemployed college student. He indicated that he had gone to downtown Los Angeles on May 24, 2012 to the Social Security office located between Fifth and Sixth Streets to update his application for benefits. After he conducted his business, he walked to the bus stop for his return trip home. En route he stopped to speak with two gentlemen he had seen in the Social Security office. According to appellant, after speaking with them for five to 10 minutes, the police officers approached appellant and took him into custody. Appellant denied having narcotics or selling narcotics that day. He testified that after the police searched him and found no drugs on him, the police made statements implying that they would "fix it." He also told the jury that he had never seen De La Roca until he was

4

placed in a patrol car with him for transport to a jail facility. Appellant admitted that he had $100 in his pocket at the time of his arrest.

The jury convicted appellant of the charge. In a subsequent proceeding, appellant admitted the allegations relating to his prior convictions. The court sentenced appellant to a total of 11 years in county jail.

Appellant timely appeals.

## *DISCUSSION*

### I. The Constitutional Claim

Appellant contends the trial court erred in concluding that Mr. Taylor could invoke the Fifth Amendment privilege to refuse to answer questions in this case without a hearing to determine the validity of his claim of privilege. Appellant maintains that the trial court's error violated his rights to due process, a fair trial, and to present evidence in his defense in violation of the United States Constitution. The Attorney General counters that appellant forfeited the right to challenge the court's ruling on appeal because appellant failed to object to it in the trial court. In addition, the Attorney General maintains that the trial court possessed enough information to determine that Taylor could exercise his Fifth Amendment privilege because Taylor had an "open case" pending against him at the time appellant sought to have him testify.

### A. Background

After appellant apprised the court that he intended to call Mr. Taylor as a witness in the case to offer evidence to impeach Officer Bednarchik and support his defense theory, the trial court appointed Mr. Taylor legal counsel to advise him as to the consequences of his testifying in this matter. Mr. Taylor and his counsel appeared and his counsel informed the court that Mr. Taylor was facing criminal charges in another matter and was awaiting arraignment in that case. Mr. Taylor's counsel also informed the court: "I've advised [Mr. Taylor] that it's probably not in his best interest to testify in this matter, and that he does have the right against self-incrimination; and I believe the prosecution may delve into his open case." The court then asked Mr. Taylor if he was going to follow the advice of his counsel, and Mr. Taylor indicated that he intended to

follow his lawyer's advice. Appellant's counsel asked to be heard, arguing: "Mr. Taylor will only be asked to testify on the very narrow topic of Officer Bednarchik, I believe. And I was wondering if there was any way if the court could just fashion what is off limits for the D.A. and myself to ask questions about Officer Bednarchik." The court responded: "Well that's not my job. His attorney has advised him not to testify at all. I don't think I can. If you can think of a way, but if his attorney is saying don't testify, he has a right not to." Appellant's counsel replied: "Fair enough, Judge. Submitted." The trial proceedings ended for the morning.

When the proceedings resumed in the afternoon after the lunch recess, appellant's counsel raised the matter of Mr. Taylor's invocation of privilege again while counsel and the court discussed whether Mr. De La Roca needed to consult with legal counsel in this case given that he was then under Proposition 36 sentence in an unrelated matter. The following exchange followed:

> "[Appellant's Counsel]: ". . . [N]ow we're talking about Mr. Taylor who's in custody, the guy who I intend on calling. He has an open case, and I completely understand about his Fifth Amendment right on the open case. [¶] However, what I have asked him to testify from for now is not related to his open case. I think it's as to Officer Bednarchik. This happened a long time ago on a completely different case that's post-conviction. So there's no Fifth Amendment right protection there. He can invoke his Fifth Amendment on the open case, yes. Just like what you're saying about . . .with Mr. De Le Roca, the same thing applies to Mr. Taylor. [Mr. Taylor] does not have a Fifth Amendment protection.
>
> "The Court: I think they're in two different positions because Mr. De La Roca does not have an open case. Mr. Taylor does have an open case. So if he testifies against the advice of his attorney and his attorney has said 'I'm not going to allow him to testify,' that could result in some negative response to his open case.
>
> "[Appellant's Counsel]: "And I understand that. That's the reason I asked earlier about setting parameters on both myself and the D.A. I believe there's – I could bring case law. I'm not saying that there is case law, but if I could bring case law that talks about how a

6

defendant whose post-conviction matter doesn't have a Fifth Amendment protection right, would you consider that in fashioning some type of boundary for Mr. Taylor to testify if he so chooses?

"The Court: Okay. That's the whole point. He's not choosing to. [¶] . . . [¶] You can bring a case like that. That's fine. But his attorney has advised him not to….I'm not the one that advises him. His attorney has said, 'I advise you not to testify.' And, now, if you want him to come out in front of the jury and say, 'I'm invoking my Fifth Amendment right.' [¶] . . . [¶] I don't know if you do that in front of the jury. We can do that outside the presence of the jury so that if he does invoke it, it's not something that they hear. [¶] . . . [¶] Bring me a case, and I'll consider it.

"[Appellant's Counsel]: If I do bring you a case, would you admonish him you do have a Fifth Amendment right on the open case but not a Fifth Amendment right on the post-conviction matter so he can make a distinction?

"The Court: I'm going to tell him to listen to his attorney. I'm not going to advise him, except I can advise him of his Fifth Amendment right, but his attorney can advise him of that."

B.    **Legal Analysis**

Under state and federal law, a witness may not be compelled to incriminate himself or herself. (See *People v. Seijas* (2005) 36 Cal.4th 291, 304.) This privilege against self-incrimination "must be accorded liberal construction in favor of the right it was intended to secure." (*Hoffman v. United States* (1951) 341 U.S. 479, 486.) Thus, a witness may assert the Fifth Amendment privilege who has "reasonable cause to apprehend danger from a direct answer," and may refuse to answer questions calling for a potential link in a chain of evidence of guilt, as well as questions calling for clear admissions against penal interest. (*Ibid.;* accord*, Ohio v. Reiner* (2001) 532 U.S. 17, 21; *People v. Lucas* (1995) 12 Cal.4th 415, 454; *People v. Cudjo* (1993) 6 Cal.4th 585, 616.)

Nonetheless, a witness does not have an unqualified right to exercise the privilege against self-incrimination. The witness is not exonerated from answering merely because he declares that in so doing he would incriminate himself – his say-so does not of itself

7

establish the hazard of incrimination.  The court, not the witness, determines whether a witness's silence is justified.  Unless the question clearly calls for an incriminating answer the witness who has asserted the privilege bears the burden of satisfying the court that an answer would have a tendency to incriminate the witness.  (*People v. Ford* (1988) 45 Cal.3d 431, 440.)  "When the privilege has been asserted, the court determines whether its exercise is proper. 'In this state, as in every other state so far as we can find, the witness is not the final judge of his right to exercise the privilege.  The court must determine whether the answer might incriminate the witness.'" (*Id.* at p. 441; *Roberts v. United States* (1980) 445 U.S. 552, 560, fn. 7 [It is "the duty of the court to determine the legitimacy of a witness's reliance upon the Fifth Amendment."].)

A determination that the witness may exercise the privilege must be made, therefore, only after the witness has asserted the privilege.  Before a claim of privilege can be sustained, the witness should be put under oath and the party calling him be permitted to begin his interrogation.  Then the witness may invoke his privilege with regard to the specific question and the court is in a position to make the decision as to whether the answer might tend to incriminate the witness.  (*People v. Ford, supra,* 45 Cal.3d at p. 441.)  Initial inquiries intended to test the validity of the claim should be conducted outside the presence of the jury.  (*People v. Mincey* (1992) 2 Cal.4th 408, 441; *People v. Ford, supra*, 45 Cal.3d at p. 441, fn. 6.)  If the court finds a valid privilege exists, it can either limit the questions the parties may ask before the jury or excuse the witness, if it becomes clear that any testimony would implicate the privilege.  (*People v. Lopez* (1999) 71 Cal.App.4th 1550, 1555.)

Once a court determines a witness has a valid Fifth Amendment right not to testify, it is, of course, improper to require him to invoke the privilege in front of a jury; such a procedure encourages inappropriate speculation on the part of jurors about the reasons for the invocation.  But where a witness has no constitutional or statutory right to refuse to testify, jurors are entitled to draw a negative inference when such a witness refuses to provide relevant testimony.  As the United States Supreme Court has observed,

8

"[a] witness may not employ the privilege to avoid giving testimony that he simply would prefer not to give." (*Roberts v. United States*, *supra*, 445 U.S. at p. 560, fn. 7.)

This court reviews the trial court's ruling permitting the witness to assert the privilege against self-incrimination de novo. (*People v. Seijas, supra*, 36 Cal.4th at p. 304.)

### 1.      Forfeiture

Prior to reaching the merits, we address the Attorney General's argument that appellant failed to preserve his constitutional complaint on appeal because he "submitted" to the court's ruling that Mr. Taylor could assert the privilege.   In general, a defendant may not complain on appeal of an error during the trial unless in a timely fashion – and on the same ground – the defendant made an assignment of error. (See *People v. Berryman* (1993) 6 Cal.4th 1048, 1072, overruled on another ground in *People v. Hill* (1998) 17 Cal.4th 800.)  This, notwithstanding, a defendant will be excused from the necessity of either a timely objection and/or a request for admonition if either would be futile. (*People v. Hill* (1998) 17 Cal.4th 800, 821, overruled on another ground in *Price v. Superior Court* (2001) 25 Cal.4th 1046, 1069, fn. 13.)

Based on the record, we conclude appellant clearly stated his opposition to the court's ruling.  Appellant initially "submitted" on the court's ruling that Mr. Taylor could invoke his privilege against self-incrimination.  However, appellant later sought to have the court revisit the matter, and argued the trial court should craft a ruling which would allow Taylor to testify as to those matters outside the scope of the privilege.  The court denied the request.  In our view, nothing further was required to preserve the claim for appellate review.

### 2.      The Trial Court's Ruling

Based on the information the court had before it, the trial court erred in concluding that Mr. Taylor could invoke his Fifth Amendment right against self-incrimination to refuse to answer questions about his interactions with Officer Bednarchik.  The court failed to make a particularized inquiry as to whether or not Mr. Taylor's claim of privilege was valid.  The court did not ask any questions, nor did it allow appellant's

9

counsel to inquire of Mr. Taylor to test whether his answers would incriminate him. Instead, the court simply accepted Mr. Taylor's counsel's representation that because he had an "open case" in an unrelated matter, that he was entitled to invoke the privilege as to all matters. In accepting Mr. Taylor's counsel's view, the court effectively abdicated its responsibility to Mr. Taylor's counsel to determine the validity of the privilege. The court's remarks also reflect the erroneous view that invoking the privilege even where a witness has no constitutional or statutory right to do so excuses the witness from being called to testify.

Furthermore, assuming that Mr. Taylor could invoke the privilege as to his "open case," the trial court could have limited the questioning of Mr. Taylor on that matter. The trial court, however, failed to recognize its authority to limit the examination to protect the privilege while allowing appellant to inquire about other matters not subject to it. As a result of the court's error, appellant was denied the opportunity to present evidence, that according to appellant, would impeach Officer Bednarchik and undermine the prosecution's version of events.

### 3. Prejudicial Error

Appellant argues the court's error denied his due process right to a fair trial and more specifically to present evidence, which he correctly asserts is a fundamental element of due process. (*Webb v. Texas* (1972) 409 U.S. 95, 98 [denying the defendant the opportunity to offer the testimony of witnesses deprives the defendant of due process of law under the Fourteenth Amendment of the Federal Constitution].) Therefore the error must be reviewed under the harmless error standard of *Chapman v. California* (1967) 386 U.S. 18, i.e., requiring reversal unless we can conclude the error was harmless beyond a reasonable doubt. Alleged federal constitutional errors are reviewed under the "beyond a reasonable doubt" test of *Chapman*. (See *People v. Robinson* (2005) 37 Cal.4th 592, 636.)

The Attorney General counters that any error with respect to the court's ruling on the due process claim is harmless because witnesses other than Officer Bednarchik, namely De La Roca and the Officer Avila, testified as to appellant's participation in the

drug transaction. However, under the *Chapman* standard of harmless error it is not enough to show that the prosecution presented other evidence to support the verdict. Instead the "[t]he beyond-a-reasonable-doubt standard of *Chapman* 'requir[es] the beneficiary of a [federal] constitutional error to prove beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.' ([*Ibid.*]) 'To say that an error did not contribute to the ensuing verdict is . . . to find that error unimportant in relation to everything else the jury considered on the issue in question, as revealed in the record.' (*Yates v. Evatt* (1991) 500 U.S. 391, 403.) Thus, the focus is on what the jury actually decided and whether the error might have tainted its decision. That is to say, the issue is 'whether the . . . verdict actually rendered in this trial was surely unattributable to the error.' (*Sullivan v. Louisiana* (1993) 508 U.S. 275, 279.)" (*People v. Pearson* (2013) 56 Cal.4th 393, 465.)

It is difficult to assess the effect upon the verdict of evidence that appellant was *not* allowed to present. As we shall explain, however, based on the evidence presented and theories argued by the parties, we are not convinced the jury's verdict was "surely unattributable" to the error.

Appellant's defense theory was that the he did not participate in the drug sale to De La Roca and the police arrested the wrong person. Therefore, at trial the jury had to decide whether to believe appellant's version of the events or that offered by De La Roca and the police. Appellant attempted to assail the credibility of De La Roca and the police to support his theory of his innocence. Unlike the officers, however, appellant had a wealth of evidence to attack the credibility of De La Roca. Appellant presented evidence at trial showing that De La Roca had a prior conviction for burglary and that he provided a false written statement to police in this case when he was arrested. Appellant argued to the jury that De La Roca had a motive to lie about the drug transaction. Appellant also presented evidence that rather than receiving a state prison sentence for his involvement in this crime, De La Roca was sent into a drug rehabilitation program and his case was dismissed. Appellant sought to show that De La Roca, who was still serving probation at the time he testified in appellant's trial, had received a deal in exchange for his testimony

11

against appellant. With De La Roca's motives in question, the veracity of the arresting officers took on paramount importance in the trial.

Appellant testified that when he was arrested and strip-searched the police found no evidence of drugs in his possession. He told the jury that after the search he overheard the police officers discuss the fact that they did not discover any drugs when they searched him, but that they would "fix it." Appellant could not identify which officers participated in this discussion; and it is unclear from the record whether Officer Bednarchik or Officer Avila was present in the room when the remarks were made. Absent evidence appellant's examination of Mr. Taylor might have revealed about Officer Bednarchik's alleged prior acts of fabricating evidence or falsifying police reports, appellant had no evidence to impeach her. Officer Bednarchik provided key testimony against appellant—she not only provided an eyewitness account of the drug transaction in his case, she recovered the rock cocaine, booked it into evidence and apparently wrote the police report. The error in this case denied appellant the chance to present evidence to the jury that, according to appellant, would have shown Officer Bednarchik had previously engaged in the same improper acts that appellant claimed occurred in this case. Had appellant presented such evidence, the jury would have a different view of the police conduct in this case. We cannot eliminate the possibility this error contributed to the ensuing verdict or that the error was unimportant in relation to everything else the jury considered. The Attorney General has not demonstrated that the error was harmless beyond a reasonable doubt under *Chapman.*

## II.    *Pitchess* **Review**

Appellant requests, and the Attorney General concurs, that this court should conduct an independent review of the record presented to the trial court *in camera* to determine whether the trial court abused its discretion in determining which if any officer personnel records should be disclosed to the defense. (*Pitchess v. Superior Court, supra,* 11 Cal.3d 531; *People v. Prince* (2007) 40 Cal.4th 1179, 1285-1286 [trial court's decision on discoverability of material in officer's files reviewed for abuse of discretion].)

12

The record of the *in camera* hearing has been made part of the appellate record, but sealed, and appellate counsel for defendant has not been permitted to view it. We have independently examined the reporter's transcript of the trial court's *in camera* hearing and review. The record is adequate for meaningful appellate review. We conclude that the trial court followed the required procedure for *in camera* review under *Pitchess* and that the trial court did not abuse its discretion in ruling on the *Pitchess* motion. (*People v. Mooc* (2001) 26 Cal.4th 1216, 1228-1229; *People v. Myers* (2007) 148 Cal.App.4th 546, 553).

Notwithstanding this conclusion, there appears to be a discrepancy between what was ordered produced by the court and what was actually disclosed to the defense. At the *Pitchess* hearing the court ordered disclosure of 14 complaints as to Officer Avila and six as to Officer Bednarchik. Appellant's counsel has informed this court that according to appellant's trial counsel only four complaints pertaining to Officer Bednarchik were received in response to the court's order. In view of this circumstance and in light of the reversal of the judgment ordered by this court, in the event the prosecution decides to retry appellant, the trial court must conduct an additional proceeding to determine whether appellant received all of the information he was entitled to receive pursuant to the original order. If it appears that full disclosure was not made, appellant should be given an opportunity to review the previously undisclosed complaints that the trial court ordered disclosed.

## DISPOSITION

The judgment is reversed.

**WOODS, Acting P. J.**

**We concur:**

**ZELON, J.**                                                      **SEGAL, J.\***

_____

\*Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.