Filed 4/30/14  P. v. Gyorgy CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(El Dorado)

----

| | |
|---|---|
| THE PEOPLE, | C071518 |
| Plaintiff and Respondent, | (Super. Ct. No. P11CRF0258) |
| v. | |
| GREGORY WILLIAM GYORGY, | |
| Defendant and Appellant. | |

Defendant was convicted of receiving stolen property and sentenced to the middle term of three years to be served in county jail.  Before trial, his codefendant entered a plea of no contest.  The prosecution called the codefendant to testify in defendant's trial and granted the codefendant use immunity, but on the stand the codefendant refused to answer questions, attempting to invoke the Fifth Amendment privilege even though the privilege was inapplicable.  On appeal, defendant contends, among other things, that putting the codefendant on the stand, knowing that he would refuse to testify, was reversible error.

1

Under well-settled law of the California Court of Appeal, if a witness is not entitled to invoke a Fifth Amendment privilege, (1) a prosecutor may call that witness to the stand and ask questions knowing that the witness will try to invoke a Fifth Amendment privilege and (2) the jury may draw negative inferences from the witness's refusal to testify.  (See *People v. Lopez* (1999) 71 Cal.App.4th 1550, 1553-1556 (*Lopez*); *People v. Morgain* (2009) 177 Cal.App.4th 454, 466-468 (*Morgain*); *People v. Sisneros* (2009) 174 Cal.App.4th 142, 151-154 (*Sisneros*).)  Here, several of defendant's contentions on appeal are based, at least in part, on his argument that the well-settled law is wrong, and he invites us to reassess the precedent, even though there have been no recent developments in the law calling the precedent into question.  We decline the invitation.  While it is not improper for defendant to make this argument on appeal, we are under no obligation to reconsider precedent every time a party asks.  (See *People v. Hughes* (2002) 27 Cal.4th 287, 346-348 [declining to reconsider precedent].)

Defendant's contentions challenging the judgment are without merit; we therefore affirm.  He also asserts that the abstract of judgment does not properly reflect the judgment.  He is correct, so we order correction of the abstract.

FACTS

On June 1, 2011, Cynthia Cutter's home was burglarized.  Among items taken were jewelry, cameras, ammunition, guns, and a safe.

Later the same day and into the next morning, deputies of the El Dorado County Sheriff's Department conducted a search on property belonging to the Gyorgy family, just a few miles away from Cutter's home.  On the property were a home, a trailer, and vehicles.  Defendant had a bedroom in the trailer, and his pickup truck was parked on the property.

A deputy approached Ryan Addington's car on the property and saw Addington (the codefendant referred to above) near the car.  Defendant was inside the car, apparently doing work on it.  Defendant's nephew, Kyle, was also on the property.

2

In Addington's car, deputies found a gun and ammunition taken from Cutter's residence. (The jury found defendant not guilty of possession of a firearm by a felon.)

In defendant's bedroom in the trailer, deputies found a piece of paper listing some of the items taken from Cutter's residence and a cigar box containing some of Cutter's jewelry. They also found tools and a butane torch in the bedroom.

In the bed of defendant's pickup truck, deputies found Cutter's safe with a hole cut in the bottom of it. In the cab of the pickup truck was another piece of paper similar to the one found in defendant's bedroom. This piece had writing listing other items taken from Cutter's residence.

At trial, the defense called defendant's brother Billy to the stand. He testified that on the day of the Cutter burglary he was almost out of gas so he borrowed defendant's pickup truck without asking. He drove to the store and, on the way back from the store, he found a safe along the side of the road. The bottom had been cut from the safe. He lifted the safe into the back of defendant's pickup and took it back to the Gyorgy property. He also gathered up paperwork, coins, a wallet, jewelry, and a gun from the same location where he found the safe. Back at the Gyorgy property, Billy put some of the items in defendant's bedroom and stashed the gun and ammunition in Addington's car.

PROCEEDINGS RELATING TO CODEFENDANT ADDINGTON

The prosecution and defense entered into a written stipulation, which stated: "Ryan Addington plead[ed] guilty on Wednesday April 25th after jury selection but before the start of evidence in this case. Mr. Addington entered his plea freely and voluntarily without any offer of leniency or promises from either the court or the prosecution. [¶] The charges he admitted included possession of a firearm and receiving stolen property on June 1, 2011, arising out of the allegations raised in this case. The gun he was accused of and admitted to possessing on June 1st was the gun found under the front seat of his car by Sheriff's Deputies during their June 1-2 search. The stolen

3

property that he was accused of and admitted to possessing on June 1st was Ms. Cutter's stolen safe, gun, ammunition and jewelry."

The prosecution called Ryan Addington as a witness during its rebuttal case. After answering just one question ("how are you?" "good"), Addington refused to answer further questions, attempting to invoke Fifth Amendment rights. At that point, the court held a hearing outside the presence of the jury. Addington made it known that he would not answer questions, so the prosecutor offered use immunity for anything relating to the Cutter burglary and possession of stolen property. Through his attorney, Addington advised the court that he would not answer questions even though he was given immunity. The trial court concluded that, because Addington had no legal right not to answer the prosecution's questions, the prosecutor could ask questions in front of the jury despite Addington's threat not to answer the questions.

In front of the jury, Addington at first testified that he had pleaded guilty to all charges against him. He then refused to answer any further questions. The prosecutor inquired concerning the nature of the charges against him, his plea to those charges, the Cutter burglary, his relationship with the Gyorgy family, and his involvement with the gun found in his car. The prosecutor asked Addington whether defendant had contacted him and invited him to the Gyorgy property on the day of the Cutter burglary. The prosecutor then inquired concerning Addington's reason for not testifying, whether he was afraid of someone, and whether he would remain silent if defendant were not involved in the concealing of the property stolen from the Cutter residence. Beyond his admission that he had pleaded guilty to the charges, Addington refused to answer any of the questions. The trial court instructed the jury that "[t]he only evidence is the answers that are received."

During closing argument, the prosecutor argued that Billy Gyorgy's testimony was unreliable because he said that Addington did not know about the gun Billy claimed to

4

have placed in Addington's car. If Addington did not know about the gun then he was innocent, yet Addington pleaded no contest to possessing that gun.

The prosecutor also argued: "[I]f there was anything [Addington] could have offered [defendant] to help him, he would have. If . . . he's willing to sacrifice a few years of his life to not be a snitch, fair enough. I suppose he's entitled to that. But that's evidence and it means something."

DISCUSSION

I

*Witness Improperly Invoking the Fifth Amendment*

As noted in the introduction, defendant contends that it was error to allow the prosecutor to call Addington to the stand and ask him questions even though it was clear that he intended not to answer. As also noted, that contention is without merit based on Court of Appeal precedent.

Because Addington had already pleaded no contest and had been given use immunity, the trial court correctly ruled that he did not retain a Fifth Amendment privilege not to testify. (*Lopez, supra,* 71 Cal.App.4th at pp. 1553-1556; *People v. Fonseca* (1995) 36 Cal.App.4th 631, 635, 637.) Further, because Addington had no Fifth Amendment privilege to remain silent, the prosecution was entitled to call him as a witness at trial, even though his refusal to testify was known. (*Morgain, supra,* 177 Cal.App.4th at pp. 466-468; *Sisneros, supra,* 174 Cal.App.4th at pp. 151-154; *Lopez, supra,* at p. 1554; *People v. Shipe* (1975) 49 Cal.App.3d 343, 349 (*Shipe*).) And the jury was entitled to draw negative inferences from his refusal to testify. (*Lopez, supra*, at p. 1554; *Morgain, supra,* at pp. 468-469.)

Defendant attempts to distinguish the cited cases by observing that the trial court allowed the prosecution to call Addington to the stand *before* holding a hearing and extending use immunity. This attempt to distinguish the Court of Appeal precedent is unsuccessful because it made no difference in the end. After the hearing, Addington did

5

exactly what he had done before the hearing; he refused to answer questions. In other words, even if the trial court should have held the hearing before having Addington take the stand, failing to do so caused no prejudice to defendant. (Cal. Const., art. VI, § 13.) Therefore, we need not decide whether error occurred at that point.

Defendant also contends that the procedure was prejudicial because the jury could not draw any reasonable inference from Addington's refusal to answer questions. To the contrary, the jury was entitled to consider Addington's refusal to answer questions in the context of all evidence introduced at trial. That evidence included the fact that Addington was an associate of defendant's family and was discovered in the presence of defendant on the day of the burglary. Knowing this, and knowing about Addington's guilty plea to the charges relating to the property stolen from Cutter's residence, the jury could reasonably infer that Addington was remaining silent to protect defendant. (See *Morgain, supra*, 177 Cal.App.4th at p. 466; *Sisneros, supra,* 174 Cal.App.4th at p. 152; *Lopez, supra*, 71 Cal.App.4th at pp. 1555-1556.)

II

*Jury's "Presumptions"*

Defendant contends that the prosecutor's questioning of Addington "gave rise to prejudicially unreasonable presumptions in violation of [defendant's] due process rights to a fair trial." (Unnecessary capitalization omitted.) More specifically, he claims that "[a]ny adverse inference as to guilt or credibility drawn from Addington's refusals to testify were so patently unreasonable" that they violated his due process rights. The precedent cited above belies this contention. It was reasonable for the jury to infer that Addington was refusing to answer questions in order to protect defendant.

III

*Confrontation Rights*

Defendant contends that the prosecutor's questions and Addington's refusal to answer the questions violated defendant's confrontation rights. (See *Douglas v. Alabama*

6

(1965) 380 U.S. 415, 419-420 [13 L.Ed.2d 934, 937-938]; *Shipe, supra,* 49 Cal.App.3d at pp. 349-355.)  In *Douglas* and *Shipe*, the courts found violations of the defendants' confrontation rights because the defendants were unable to cross-examine the witnesses who refused to testify.  The danger addressed in those cases is that the jury may have relied on the questions by the prosecutor as evidence.  Those cases, however, are distinguishable.

In *Shipe*, the appellate court found that the prosecutor's implication that the witness had made prior statements was prejudicial.  The court stated:  "[A] prosecutor is not required to accept at face value every asserted claim of privilege, and he may compel a witness to claim the privilege against self-incrimination on a question-by-question basis.  [Citations.]  But, he may not, under the guise of cross-examination, get before the jury what is tantamount to devastating direct testimony.  For example, here the prosecutor, after compelling [the defendant's accomplices] to admit that they pled guilty to complicity in the murder of [the victim], succeeded, through a series of blatantly leading questions, in creating the almost irrefutable inference that appellant was the one who viciously and brutally stabbed the decedent.  He also succeeded in creating the distinct and almost irrefutable inference that the witnesses had related the events about which they were being questioned to the authorities and that their statements were true.  It is precisely this form of questioning that the United States Supreme Court condemned in *Douglas v. Alabama, supra*, 380 U.S. 415, 420."  (*Shipe, supra,* 49 Cal.App.3d at pp. 349-350.)

The main confrontation problem addressed in *Douglas* and *Shipe* is that the prosecutor in each case questioned the witness about prior statements, thus effectively introducing the prior statement to the juror's minds without an opportunity for the defense to cross-examine the witness effectively about that statement.  In *Douglas*, the court stated:  "[P]etitioner's inability to cross-examine [the recalcitrant witness] as to the

7

alleged confession plainly denied [petitioner] the right of cross-examination secured by the Confrontation Clause." (*Douglas v. Alabama, supra,* 380 U.S. at p. 419.)

Here, the prosecutor did not imply any prior statements by Addington. Instead, the prosecutor asked questions about the involvement of Addington and defendant in the crimes and about Addington's refusal to answer questions. Therefore, this case does not present the same problem addressed in *Douglas* and *Shipe*, concerning the lack of opportunity to cross-examine about prior statements.

In any event, the trial court reminded the jury, contemporaneously with Addington's refusal to answer questions, that "[t]he only evidence is the answers that are received." Accordingly, we presume that the jury followed the court's instructions and did not accept the prosecutor's questions as establishing any fact. (See *Morgain, supra,* 177 Cal.App.4th at p. 465.)

Defendant's contention that his confrontation rights were violated is without merit.

IV

*Effective Assistance of Counsel – Stipulation*

Defendant contends that his trial attorney violated his right to counsel when he stipulated to Addington's plea. He claims the stipulation was incorrect because Addington pleaded no contest (not a guilty plea) and that the stipulation admitted substantive evidence against him without giving him the opportunity to cross-examine. It appears, however, that defense counsel's reasonable and rational trial strategy was to blame Ryan Addington (along with Billy Gyorgy) for both the burglary and the presence of the stolen items on the Gyorgy property. The stipulation supported the strategy of pinning blame on Addington. Since the stipulation was part of a reasonable and rational trial strategy, it did not constitute ineffective assistance of counsel.

Under both the Sixth Amendment to the United States Constitution and article I, section 15 of the California Constitution, a criminal defendant has a right to the assistance of counsel. (See *Strickland v. Washington* (1984) 466 U.S. 668, 684-685 [80

8

L.Ed.2d 674, 691-692]; *People v. Pope* (1979) 23 Cal.3d 412, 422.) This right "entitles the defendant not to some bare assistance but rather to *effective* assistance." (*People v. Ledesma* (1987) 43 Cal.3d 171, 215, original italics.) "To establish entitlement to relief for ineffective assistance of counsel the burden is on the defendant to show (1) trial counsel failed to act in the manner to be expected of reasonably competent attorneys acting as diligent advocates and (2) it is reasonably probable that a more favorable determination would have resulted in the absence of counsel's failings. [Citations.]" (*People v. Lewis* (1990) 50 Cal.3d 262, 288.)

"In evaluating a defendant's claim of deficient performance by counsel, there is a 'strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance' [citations], and we accord great deference to counsel's tactical decisions. [Citation.] Were it otherwise, appellate courts would be required to engage in the ' "perilous process" ' of second-guessing counsel's trial strategy. [Citation.] Accordingly, a reviewing court will reverse a conviction on the ground of inadequate counsel 'only if the record on appeal affirmatively discloses that counsel had no rational tactical purpose for his act or omission.' [Citations.]" (*People v. Frye* (1998) 18 Cal.4th 894, 979-980, disapproved on another ground in *People v. Doolin* (2009) 45 Cal.4th 390, 421, fn. 22.)

In his closing argument, defense counsel laid blame for the crimes on Billy Gyorgy and Ryan Addington. He claimed that both of those men knew about the stolen items and that defendant did not. He used Addington's plea as proof that Addington knew about the stolen items, thus accounting for the gun and ammunition in Addington's car. Defense counsel argued that Billy and Addington committed the burglary and that they admitted only to possessing the items taken from Cutter's residence because possession is a less serious crime then burglary. Simply put, the stipulation concerning Addington's plea supported defense counsel's attempt to convince the jury, or at least raise a reasonable doubt, that Billy and Addington committed the burglary and brought

9

the stolen property back to the Gyorgy property without defendant's knowledge. The strategy was reasonable and rational in light of the presence of the stolen items on the Gyorgy property and their proximity to defendant's person and his living space; therefore, defense counsel was reasonably competent.

Defendant's argument on appeal that his trial attorney violated his right to counsel does not account for this strategy. Instead, he claims that (1) Addington's plea was a no contest plea, not a guilty plea, and (2) Addington's plea was not admissible to establish defendant's guilt. In light of defense counsel's strategic use of the evidence of Addington's plea, however, these legal arguments, even if true, do not support the contention that counsel was constitutionally ineffective for entering into the stipulation.

V

*Accomplice Instructions*

Defendant contends that the trial court erred by not giving the jury the standard accomplice testimony instruction. As defendant acknowledges, Addington's testimony consisted of stating that he had pleaded guilty to the charges and refusing to answer any other questions. However, defendant claims that the stipulation, in which it was agreed that Addington admitted possessing stolen items from the Cutter property, should also have been the basis for an accomplice instruction. We conclude that, even if the trial court should have given an accomplice testimony instruction, any error was harmless because Addington's admission to possessing the stolen items was well corroborated.

Because a conviction cannot be based on uncorroborated accomplice testimony (Pen. Code, § 1111), a trial court has a duty to instruct the jury on accomplice testimony when the circumstances so require. (*People v. Tobias* (2001) 25 Cal.4th 327, 331.) However, error in failing to give an accomplice testimony instruction "is harmless if the record contains 'sufficient corroborating evidence.' [Citation.] 'Corroborating evidence may be slight, entirely circumstantial, and entitled to little consideration when standing alone. [Citations.] It need not be sufficient to establish every element of the charged

10

offense or to establish the precise facts to which the accomplice testified. [Citations.] It is "sufficient if it tends to connect the defendant with the crime in such a way as to satisfy the jury that the accomplice is telling the truth." [Citation.]' [Citation.]" (*People v. Manibusan* (2013) 58 Cal.4th 40, 95.)

Here, defendant concedes that Addington's admissions contained in the stipulation about possessing the stolen items were corroborated. He argues, nonetheless, that error in not giving an accomplice testimony instruction was prejudicial. He claims:

"The court's failure was not harmless . . . because the underlying error in this case was that an accomplice's admission was used to provide 'content' to the existing but ambiguous circumstantial facts, rather than having clear circumstantial facts provide corroboration to testimony which implicated another. In other words, even if Addington is deemed to have testified 'I possessed the stolen property found in [defendant's] trailer' and even if that testimony is 'corroborated' by the property found in the trailer[,] the sum of these evidentiary facts still only provided guilt by association as to [defendant]. This inverse use of accomplice 'testimony' was an inevitable result of the improper inference allowed by the court and relied on by the prosecution. [¶] The omitted instruction would have provided a brake on the prosecution's run-away inferences by informing the jury that they could not convict based on Addington's testimony alone and that its tendency to incriminate [defendant] should be viewed with caution."

This argument, for which defendant provides no authority, appears to be a sufficiency of evidence argument, not an argument that the trial court prejudicially failed to instruct on accomplice testimony. It is also not persuasive. There is no reason to believe the jury convicted defendant "based on Addington's testimony alone." There was ample evidence, beyond Addington's admissions, that incriminated defendant, most strikingly the presence of the stolen items in defendant's bedroom and pickup truck.

The contention is without merit.

11

# VI

## *Alleged Prosecutorial Misconduct*

Defendant contends that the prosecutor's misconduct caused prejudice to defendant. We need not review the law concerning prejudicial prosecutorial misconduct because defendant's premise, that the prosecutor committed misconduct, is false.

Defendant argues: "The prosecution's misconduct resulted from its incorrect assumption that a witness could be called to the stand for the supposed 'evidentiary' purpose of invoking a privilege and/or refusing to testify. Although the trial court erroneously acquiesced in that view, the strategy pursued based on that error was still misconduct and prejudiced the outcome . . . ."

As we have stated, the law allowed the prosecutor to call Addington to the stand and question him, even knowing that Addington would refuse to testify. The law also allowed the jury to draw negative inferences from Addington's refusal to testify and, as a result, it was not improper for the prosecutor to argue those negative inferences in closing argument.

Defendant also contends that the prosecutor intentionally solicited false testimony from Addington. The only question that Addington answered was whether he had pleaded guilty. He answered in the affirmative, even though he actually pleaded no contest. Defendant argues that this makes a difference because a no contest plea cannot be used as res judicata as to third parties. To the contrary, regardless of whether Addington pleaded guilty or no contest, the parties here stipulated that Addington admitted possessing the items stolen from the Cutter property. In light of that admission, there is no difference between a guilty plea and a no contest plea for the purposes of this case. As we noted above, defense counsel reasonably used Addington's admission to bolster his argument to the jury that Billy and Addington were the culprits, not defendant.

12

## VII

*Effective Assistance of Counsel – Prosecutor's Arguments*

Defendant contends that his trial attorney violated his right to counsel by not objecting to the prosecutor's closing arguments. As we have stated, there was nothing improper about the prosecutor's closing arguments. Therefore, trial counsel was not constitutionally ineffective for not objecting.

## VIII

*Cumulative Prejudice*

Having found no prejudicial error or prosecutorial misconduct, we also reject defendant's argument that the errors and misconduct caused prejudice cumulatively even if they did not cause prejudice individually.

## IX

*Abstract of Judgment*

Finally, defendant contends that the abstract of judgment must be corrected because it lists a $480 parole revocation fine that was not imposed. The Attorney General agrees that the fine was not imposed and that the abstract must be corrected. We also agree. The trial court stated that defendant is not subject to parole for this conviction, and, therefore, the court did not impose a parole revocation fine. We rectify the inconsistency by directing the trial court to correct the abstract.

## DISPOSITION

The judgment is affirmed. The matter is remanded for correction of the abstract of judgment by deleting the $480 parole revocation fine, and the trial court is directed to

send a copy of the corrected abstract of judgment to the Department of Corrections and Rehabilitation.

                                                                                    NICHOLSON     , J.

We concur:

          BLEASE          , Acting P. J.

          MAURO          , J.