Filed 6/4/25  P. v. Perez CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | F088478 |
| Plaintiff and Respondent, | (Super. Ct. No. VCF142069A) |
| v. | |
| FELICIANO PEREZ, | **OPINION** |
| Defendant and Appellant. | |

### THE COURT[*]

APPEAL from a judgment of the Superior Court of Tulare County.  Melinda Myrle Reed, Judge.

Feliciano Perez, in pro. per.; and Randy S. Kravis, under appointment by the Court of Appeal, for Defendant and Appellant.

Office of the Attorney General, Sacramento, California, for Plaintiff and Respondent.

-ooOoo-

---

[*] Before Levy, Acting P. J., Franson, J. and Snauffer, J.

Appellant Feliciano Perez appeals the denial of his request for resentencing after a hearing to determine whether he was entitled to relief. (Pen. Code, § 1172.6.)[1] Appellant's counsel initially filed a brief requesting this court independently review the record in line with principles defined in *People v. Delgadillo* (2022) 14 Cal.5th 216 (*Delgadillo*). Appellant then submitted a separate supplemental letter brief raising seven issues he wished to have reviewed. For the reasons set forth below, we affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

This is the second time an appeal from appellant's petition for resentencing has reached this court. We first repeat and incorporate our factual and procedural background from appellant's first appeal.[2] We then provide additional factual and procedural information following remand.

In 2005, appellant and two codefendants, Daniel Alonzo and Jose Gonzalez, were charged in a criminal complaint with the murder of Jesus Gonzalez (the victim), two counts of arson, one count of unlawful driving or taking of a vehicle, and one count of destroying evidence. Appellant was additionally charged with the special allegations that he used a deadly weapon (a baseball bat) during the murder and committed the murder while engaged in committing robbery and kidnapping. Following appellant's preliminary hearing, the subsequent information filed included three special circumstance allegations of felony murder and charges for kidnapping, second degree robbery, and first degree residential burglary.

In 2006, appellant entered into a plea agreement in which he would plead to first degree murder (§ 187, subd. (a); count 1) and first degree residential burglary (§ 459; count 4) and have all other allegations dismissed in exchange for a stipulated sentence of

---

[1] Undesignated statutory references are to the Penal Code.

[2] At appellant's request, this court previously took judicial notice of the record from his previous appeal (*People v. Perez* (Apr. 9, 2024, F086733) [nonpub. opn.]).

29 years to life.  Appellant then entered his plea "pursuant to *People v. West*"[3] and stipulated "to the preliminary hearing transcript that you presided over for purposes of factual basis as to Counts 1 and 4."  The trial court sentenced him in line with the plea agreement.

The preliminary hearing transcript contained multiple versions of the events surrounding the murder and burglary.  The victim was noticed to be missing during an investigation into a fire at his house.  The house also showed signs of a potential burglary.  While the investigation was ongoing, the victim was found dead in a canal, having been bound and beaten.  His death was deemed to result from drowning.

In one of the versions of events described at the preliminary hearing, appellant allegedly admitted to burglarizing a house with two others and stealing property from it.  Appellant was later seen driving the victim's truck.  Appellant purportedly admitted to striking the victim with a baseball bat, but more broadly claimed that he and his codefendants, together, had bound the victim before throwing him into the canal.

In another version, one of appellant's codefendants described how he, appellant, and the third codefendant went to the victim's house to complete a robbery.  According to the codefendant, appellant struck the victim with a hatchet before binding him.  The three then attempted to burn down the victim's house before transporting him to a canal.  There, appellant struck the victim multiple times with a baseball bat before he was thrown, alive, into the canal.  The codefendant admitted to participating in some of these events and to apologizing to the victim as it was happening.

In yet another version, appellant's other codefendant alleged that appellant had taken all of the most violent actions.  In this version, while at the victim's house, appellant found an ax and threatened the victim with it.  Appellant then ordered his codefendants to tie up the victim.  Appellant struck the victim several times before

---

[3] *People v. West* (1970) 3 Cal.3d 595.

moving him to the back of a van. When the three codefendants reached the canal, appellant ordered the victim be killed. When this order was not followed, appellant struck the victim with a baseball bat and threw him into the canal.

In 2023, appellant petitioned for resentencing. The trial court initially denied appellant's petition based on his failure to make a prima facie showing of eligibility. On appeal from that order, and in line with the People's concessions, this court found that that the factual discrepancies contained in the preliminary hearing transcript precluded finding appellant was ineligible for resentencing without a show cause hearing under section 1172.6, subdivision (c). (*People v. Perez, supra*, F086733.)

The trial court held the required show cause hearing on August 6, 2024. The trial court began the proceedings with a hearing on the prosecution's in limine motion seeking to declare one of appellant's codefendants, Jose Antonio Rios Gonzalez, unavailable and to admit his prior preliminary hearing testimony as admissible statements made against penal interests under Evidence Code section 1230.

In line with this request, Tulare County District Attorney's Office, Bureau of Investigations, Sergeant John Lee testified to the efforts made to locate Gonzalez. Lee testified that process servers were unable to locate Gonzalez and Lee's own initial searches also failed to locate Gonzalez. Lee found a parole record from December 2014 and learned that Gonzalez may have been turned over to the Department of Homeland Security and possibly deported to his country of origin. While Lee believed that location to be Mexico, he had no confirmation of that fact. Lee later became aware that a person by the name of Jose Gonzalez was "detained … at the border" but could not confirm his birth date matched with certainty and had no other way to confirm that person was the same Gonzalez.

After argument, the trial court found the People had exercised reasonable diligence to procure Gonzalez's attendance, rendering him unavailable, and that testimony regarding Gonzalez's statements to investigators that had been recounted at appellant and

4.

Gonzalez's joint preliminary hearing pursuant to section 872, subdivision (b) was admissible in the show cause hearing under Evidence Code section 1230.

Following this, the court heard evidence from two witnesses, Jeanette G. (appellant's former girlfriend) and Daniel Alonzo (appellant's codefendant). Jeanette generally claimed she could not remember much from the events nearly 20 years prior. However, she was able to recall appellant going out with a few people and getting into an altercation or fight involving a baseball bat, the victim in the fight had been tied up, and she had spoken to an investigator and testified previously about what she had been told at the time.

The prosecutor attempted to refresh Jeanette's memory by showing her some of her prior statements. Based on this attempt, Jeanette confirmed appellant had stated "they confronted the man, scared a man, and took him for his money," but later claimed to only admit to the fact that if she had said that before, it was accurately recounted on the paper she was shown. Eventually, she recalled appellant stating that the victim had been hit by someone with a baseball bat, tied up, and thrown into a canal.

During her testimony, Jeanette twice asked whether she could speak to counsel before proceeding. In both instances, she explained, "It has been a very long time," or "[T]here's a lot of things I don't remember." The trial court denied the requests, stating there was no legal basis for them.

Alonzo began his testimony by also requesting to speak with an attorney before proceeding. In response to this request, the trial court stated it had no information why Alonzo would be entitled to an attorney and asked for additional input. Appellant's counsel stated he had not spoken with Alonzo previously and had no information. The People argued there was no risk of self-incrimination as Alonzo was already in custody on the relevant crime. The trial court then instructed the People that they could proceed.

Under questioning, Alonzo stated that he, Gonzalez, and appellant went to the victim's house because Gonzalez told them to go steal some weapons. After gaining

entry by telling the victim they ran out of gas, Alonzo testified appellant "walked out with an axe, and then I tied" the victim. Appellant allegedly told the victim he was going to kill him before Alonzo dragged the victim outside while appellant and Gonzalez searched the house for weapons. Stolen items were placed in the victim's truck before appellant drove that truck to a canal while Alonzo and Gonzalez followed in a van with the victim. Alonzo claimed there was no specific plan and he did not recall seeing who set fire to the victim's house.

Once the three reached the canal, Alonzo asked appellant what he planned to do, and appellant stated he was going to kill the victim. Alonzo and Gonzalez removed the victim from the van, and appellant struck the victim in the head two or three times with a baseball bat. Alonzo claimed that he and Gonzalez then threw the victim into the canal.

Following this testimony, the People rested. The trial court then asked whether the prosecutor was "asking that the Court consider the testimony of Detective Arnold as impeachment evidence" as to Jeanette's testimony and Alonzo's testimony. The prosecutor responded affirmatively. Appellant's counsel then asked the trial court take judicial notice of the preliminary hearing transcript to the extent it showed the cause of death as drowning. The trial court affirmed it had "read and considered all the admissible evidence for this hearing that may be received, taken from the preliminary hearing transcript." The trial court further explained, "[T]he testimony of Investigator Arnold as to [Jeanette] is to be received in this hearing as impeachment testimony. The same is true as to … Alonzo at this hearing. The testimony of Detective Arnold as it differs from Alonzo's testimony here today, is properly considered by the Court as impeachment testimony."

The trial court then heard argument from both sides before denying the petition. In explaining this ruling, the trial court noted that Alonzo had previously testified that appellant had thrown the victim into the canal but that the evidence is clear the victim

6.

was beaten and tied up prior to drowning. The trial court also noted that Jeanette's prior statements were not clear on who threw the victim into the canal.

The trial court then found the People had proven appellant guilty of malice murder beyond a reasonable doubt and laid out several bases. First, the trial court found express malice based on appellant's statements that he was going to kill the victim. The trial court also found implied malice from appellant's actions and that the natural and probable consequences of those acts were dangerous to human life or involved a high degree of probability that they would result in death, a fact appellant was found to have known at the time.

The trial court also found the People had proven appellant guilty beyond a reasonable doubt of felony murder. Although the trial court believed appellant to be the actual killer in this case, it noted that "if not the actual killer, … [appellant] clearly acted with the intent to kill, and he aided and abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of the murder." Relatedly, the trial court concluded, "[Appellant] was a major participant in the underlying felony and acted with reckless indifference to human life." The trial court based this finding on the facts that appellant "threatened to take the victim's life"; "retrieved the axe which was used to hit the [victim]"; "drove the victim's car to the canal"; "was involved in throwing the victim into the canal"; and at "no time, ever attempted to intervene and save the victim's life."

This appeal timely followed.

## DISCUSSION

Appellant's letter brief raises seven issues. The issues are broadly categorized as misconduct claims (first–third, fifth, & sixth issues) and ineffective assistance of appellate counsel claims (fourth & seventh issues). Within the misconduct claims, appellant raises judicial misconduct claims related to actions or rulings by the trial judge, judicial/prosecutorial misconduct claims related to witnesses' requests for counsel, and

7.

prosecutorial misconduct claims concerning the nature of the prosecutor's questioning. The ineffective assistance of appellate counsel claims allege appellate counsel should have raised appellant's second, third, fifth, and sixth issues on direct appeal. This court will resolve the misconduct claims first, leaving the ineffective assistance claims until last.

### *Applicable Law*

In *Delgadillo*, our Supreme Court set out the principles to follow when counsel finds no arguable issues for appeal following the denial of a resentencing request under section 1172.6: "When appointed counsel finds no arguable issues to be pursued on appeal: (1) counsel should file a brief informing the court of that determination, including a concise recitation of the facts bearing on the denial of the petition; and (2) the court should send, with a copy of counsel's brief, notice to the defendant, informing the defendant of the right to file a supplemental letter or brief and that if no letter or brief is filed within 30 days, the court may dismiss the matter. [Citations.]

"If the defendant subsequently files a supplemental brief or letter, the Court of Appeal is required to evaluate the specific arguments presented in that brief and to issue a written opinion. The filing of a supplemental brief or letter does not compel an independent review of the entire record to identify unraised issues." (*Delgadillo, supra*, 14 Cal.5th at pp. 231–232.) "While it is wholly within the court's discretion, the Court of Appeal is not barred from conducting its own independent review of the record in any individual section 1172.6 appeal." (*Id.* at p. 232.)

### *Appellant's Misconduct Claims Fail*

As noted, appellant's letter brief contains five issues that are broadly categorized as misconduct allegations. In the first issue, appellant contends the trial judge was "NOT an unbiased judge" based on her visible demeanor and decisions, which appellant contends were " 'reading' the prosecutor[']s mind." This contention is described in the sixth issue, which alleges judicial misconduct when the trial judge "miraculously 'read

8.

the prosecutor's mind' " by asking whether certain preliminary hearing evidence that had previously been admitted would be used as impeachment evidence as to Jeanette and Alonzo. The second issue claims judicial misconduct when the trial court found statements in the preliminary hearing transcript were admissible based on Gonzalez being unavailable and the statements satisfying Evidence Code section 1230. The third and fifth issues claim judicial and prosecutorial misconduct when the court denied Jeanette's and Alonzo's requests for counsel at the hearing and the prosecutor both challenged Jeanette's memory of the events and allegedly improperly attempted to refresh Alonzo's memory.

*Standard of Review and Applicable Law*

"We review claims of judicial misconduct on the basis of the entire record." (*People v. Peoples* (2016) 62 Cal.4th 718, 789.) "A trial judge may examine witnesses to elicit or clarify testimony." (*People v. Rigney* (1961) 55 Cal.2d 236, 241.) "The trial judge, however, must not become an advocate for either party or under the guise of examining witnesses comment on the evidence or cast aspersions or ridicule on a witness." (*Ibid.*)

" ' " '[O]ur role … is not to determine whether the trial judge's conduct left something to be desired, or even whether some comments would have been better left unsaid. Rather, we must determine whether the judge's behavior was so prejudicial that it denied [the defendant] a fair, as opposed to a perfect, trial.' " ' " (*People v. Seumanu* (2015) 61 Cal.4th 1293, 1321.) Generally, "a specific and timely objection to judicial misconduct is required to preserve the claim for appellate review." (*Id.* at p. 1320.) However, "a defendant's failure to object does not preclude review 'when an objection and an admonition could not cure the prejudice caused by' such misconduct." (*People v. Perkins* (2003) 109 Cal.App.4th 1562, 1567.)

"We review claims of prosecutorial misconduct pursuant to a settled standard. 'Under California law, a prosecutor commits reversible misconduct if he or she makes

9.

use of "deceptive or reprehensible methods" when attempting to persuade either the trial court or the jury, and it is reasonably probable that without such misconduct, an outcome more favorable to the defendant would have resulted. [Citation.] Under the federal Constitution, conduct by a prosecutor that does not result in the denial of the defendant's specific constitutional rights—such as a comment upon the defendant's invocation of the right to remain silent—but is otherwise worthy of condemnation, is not a constitutional violation unless the challenged action " 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.' " ' " (*People v. Dykes* (2009) 46 Cal.4th 731, 760 (*Dykes*).)

"We review the trial court's rulings on prosecutorial misconduct for abuse of discretion." (*Peoples, supra*, 62 Cal.4th at pp. 792–793.) Thus, " ' "a defendant may not complain on appeal of prosecutorial misconduct unless in a timely fashion—and on the same ground—the defendant made an assignment of misconduct and requested that the jury be admonished to disregard the impropriety." ' " (*Dykes, supra*, 46 Cal.4th at p. 760.) Where no objection is made, " 'the point is reviewable only if an admonition would not have cured the harm caused by the misconduct' " or an objection would have been futile. (*People v. Clark* (2016) 63 Cal.4th 522, 577, quoting *People v. Price* (1991) 1 Cal.4th 324, 447.)

*Analysis*

This court notes that no objections based on judicial or prosecutorial misconduct were made during the proceedings. Nor does the record reflect that raising such concerns would have been futile, as the record shows the trial court was engaged in the proceedings and willing to discuss all issues raised. Accordingly, appellant's claims can be deemed forfeited. (See *People v. Clark, supra*, 63 Cal.4th at p. 577 [objection required to preserve prosecutorial misconduct claim]; *People v. Perkins, supra*, 109 Cal.App.4th at p. 1567 [objection required to preserve judicial misconduct claim].)

10.

In light of the procedural posture of this case, this court also notes that we have reviewed appellant's claims on the merits and find no error. Appellant's first and sixth issues derive from the trial court's confirmation that the preliminary hearing transcript was being offered as impeachment evidence against Jeanette and Alonzo. "Evidence of a statement made by a witness is not made inadmissible by the hearsay rule if the statement is inconsistent with his testimony at the hearing .…" (Evid. Code, § 1235.) Prior statements inconsistent with a professed memory loss are admissible where the lack of memory amounts to deliberate evasion. (*People v. Anderson* (2018) 5 Cal.5th 372, 403.) Further, the trial court has a duty and a right to conduct a trial in such a manner that the truth will be established in accordance with the rules of evidence. (*People v. Carlucci* (1979) 23 Cal.3d 249, 255.) Thus, the trial court had the authority to raise issues with the scope of the evidence offered and how it would be used. Further, the trial court's discussion with counsel and its rulings demonstrate it only admitted prior testimony "when it differ[ed]" from witness testimony. This court sees no error in this ruling.

Similarly, upon review of the record as a whole, this court sees no evidence supporting appellant's argument of bias based on the trial court's demeanor. Rather, as reflected in this court's discussion here and below, the record shows the trial court professionally working through the issues in front of it and properly engaging in its duties. There is no objective evidence in the record to support appellant's claims the trial court held an improper demeanor or that the trial court's demeanor affected its ability to remain unbiased.

Appellant's third and fifth issues concern the trial court's failure to appoint counsel for two witnesses. However, appellant has pointed to no law, and this court has found none, that demonstrates a witness is entitled to court-appointed counsel when testifying generally. Counsel may be appointed when a self-incrimination issue arises, but there is no indication of such an issue here. Jeanette merely expressed concern that she may have forgotten things over time, and Alonzo was already in custody for the offense and thus

faced no further criminal risk. (See *People v. Lopez* (1999) 71 Cal.App.4th 1550, 1554 [noting court's duty to review claims of privilege not to testify and that such claims fail when a defendant has already pleaded guilty to a charge and time to appeal has ended].) The trial court committed no misconduct in properly denying the unsupported requests for counsel.

Nor do the questions and exchanges surrounding these requests demonstrate prosecutorial or judicial misconduct. Appellant contends that objections to leading questions and other prosecutorial efforts were routinely overruled and the trial court improperly aided the prosecutor when they failed to properly refresh past recollections. Again, this court sees no error. It is well settled that the trial court may permit leading questions and has a duty to properly manage the proceedings. (See *People v. Williams* (1997) 16 Cal.4th 635, 672 [trial court has broad discretion to permit leading questions]; *People v. Corrigan* (1957) 48 Cal.2d 551, 559 [noting "it is the right and the duty of a judge to conduct a trial in such a manner that the truth will be established in accordance with the rules of evidence"].) Nothing in appellant's arguments show the trial court erred or that its rulings reflected any bias toward appellant. Similarly, nothing in the prosecutor's questions implies or demonstrates the use of deceptive or reprehensible methods or conduct that infected the trial with unfairness. (See *Dykes, supra*, 46 Cal.4th at p. 760.)

Appellant's second issue alleges judicial misconduct based on admitting Gonzalez's testimony from the preliminary hearing. Appellant contends the prosecutor failed to demonstrate reasonable diligence in seeking Gonzalez because the investigator seeking Gonzalez determined someone with the same name and birth date was in custody with the Department of Homeland Security but did nothing to further verify that person was the correct Gonzalez. We do not agree there was an error.

The record does not show the detained individual shared the same birth date with the correct Gonzalez, as the investigator clearly indicated that the person was found under

12.

multiple birth dates. Nor does the record show the fact a Gonzalez was detained had been known for weeks, as the investigator testified that he only learned of this when he "reran him through [United States Immigration and Customs Enforcement] yesterday." More importantly, one is unavailable when they are absent and reasonable diligence was made to procure their attendance, with reasonable diligence connoting perseverance and efforts of a substantial character made in good earnest. (*People v. Roldan* (2012) 205 Cal.App.4th 969, 979.)

Substantial evidence in the record shows such efforts, including evidence of efforts by process servers, a review of records showing Gonzalez had been removed to his home country, and continuing efforts up to the day of the hearing resulting in, at best, a discovery that Gonzalez might have been in custody at the border but with no way to confirm that potential fact. On these grounds, the court acted within its discretion in finding Gonzalez unavailable, and the record fails to demonstrate judicial bias influenced this decision.

Finally, even if the court were to find an error, appellant cannot demonstrate that error was prejudicial. Appellant is only entitled to resentencing if the prosecution fails to prove "beyond a reasonable doubt, that the petitioner is guilty of murder or attempted murder under California law as amended by the changes to Section 188 or 189 made effective January 1, 2019." (§ 1172.6, subd. (d)(3).) Malice cannot be imputed solely based on participation in a crime. (§ 188, subd. (a)(3).) A participant in a robbery or burglary in which a death occurs is liable for murder only if (1) they are the actual killer, (2) they acted to assist the actual killer in commission of murder with an intent to kill, or (3) they were a major participant in the underlying felony and acted with reckless indifference to human life. (§ 189, subd. (e).)

Here the trial court found appellant could be convicted of murder under all of the above theories. Even if this court only reviews the evidence provided by Alonzo's testimony at the hearing, the trial court's ruling is well supported by the evidence. As

noted above, Alonzo testified that appellant was a major participant in the robbery and kidnapping of the victim; expressed a direct intent to kill the victim; struck the victim multiple times; and instructed others to participate in the binding, transportation, and eventual act of tossing the victim into the canal. Even if this court accepts that appellant is not the actual killer, the evidence shows, beyond a reasonable doubt, that appellant assisted the actual killer while harboring an intent to kill and was a major participant in the underlying felony that acted with a reckless indifference to human life. The trial court correctly found appellant ineligible for relief.

### _Appellant's Ineffective Assistance of Appellate Counsel Claims Fail_

Appellant's fourth and seventh issues raise ineffective assistance of appellate counsel arguments based on counsel's decision to file a brief under _Delgadillo_, and thereby not raise the points discussed in the first through third, fifth, and sixth issues. Appellant's arguments fail.

" 'A criminal defendant is guaranteed the right to the assistance of counsel by both the state and federal Constitutions.' " (_In re Harris_ (1993) 5 Cal.4th 813, 832, disapproved on another ground in _Shalabi v. City of Fontana_ (2021) 11 Cal.5th 842, 854, fn. 5.) " 'In order to demonstrate ineffective assistance of counsel, a defendant must first show counsel's performance was "deficient" because his "representation fell below an objective standard of reasonableness … under prevailing professional norms." [Citations.] Second, he must also show prejudice flowing from counsel's performance or lack thereof. [Citation.] Prejudice is shown when there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." ' " (_In re Harris_, pp. 832–833.) "Similar concepts have been used to measure the performance of appellate counsel." (_Id._ at p. 833.)

This court's above analysis finds no judicial or prosecutorial misconduct and no error in the rulings challenged in appellant's letter brief. Accordingly, appellant's

ineffective assistance of appellate counsel claims must fail.  Even if this court were to find deficient performance, which it does not on this record, appellant cannot demonstrate a reasonable probability that the result of the proceeding would have been different.

### *An Independent Review of the Record Shows No Error*

In order to review the issues raised in appellant's letter brief, this court was required to undertake a thorough review of the record.  Based on this, the court chose to exercise its discretion to review the entire record for any additional error.  (See *Delgadillo, supra*, 14 Cal.5th at p. 232 ["While it is wholly within the court's discretion, the Court of Appeal is not barred from conducting its own independent review of the record in any individual section 1172.6 appeal."].)  Upon review, this court finds no potential error that would warrant reversing the trial court's determination that appellant is ineligible for relief.

### DISPOSITION

The judgment is affirmed.